IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ABS-CBN CORPORATION, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CASE NO.  3:19-cv-00397 |
| | § | |
| ANTHONY BROWN, | § | |
| | § | |
| Defendant. | § | |

PLAINTIFFS' MOTION FOR ENTRY OF A FINAL DEFAULT JUDGMENT
AND PERMANENT INJUNCTION AGAINST DEFENDANT,
AND MEMORANDUM OF LAW IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International (collectively, "ABS-CBN" or "Plaintiffs") file this Motion for Entry of a Final Default Judgment and Permanent Injunction Against Defendant, and Memorandum of Law in Support ("Motion").

## TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDING …………………………………………1

II.   ISSUES TO BE RULED UPON……………………………………………………..4

III.  STANDARD OF REVIEW...………………………………………………………..4

IV.  SUMMARY OF THE ARGUMENT...……………………………………………...5

V.   RELEVANT BACKGROUND FACTS...………………………………………...6

1. Plaintiffs' World-Renowned Entertainment Services, Satellite TV Broadcasts, and Encryption Technology........................................................................................6

i

2.  Plaintiffs' Trademarks.................................................................................8

3.  Defendant's Illegal Activities...................................................................9

VI.  ARGUMENT..................................................................................................12

1.  Factual Allegations in Plaintiffs' Complaint are Deemed Admitted......................12

2.  ABS-CBN has Established Defendant's Liability ...................................................12

(i)  Communications Act Claims.........................................................12

(ii)  Lanham Act Claims....................................................................15

3.  ABS-CBN is Entitled to a Permanent Injunction....................................................17

4.  ABS-CBN is Entitled to Recover Statutory Damages.........................................19

(i)  Communications Act Claims.........................................................19

(ii)  Federal Trademark Counterfeiting Claims.........................................24

VII.  CONCLUSION..........................................................................................27

## I.  NATURE AND STAGE OF THE PROCEEDING

This case involves the theft of federally protected communications, and federal trademark infringement and counterfeiting.  Specifically, on December 5, 2019, ABS-CBN filed this action against the defendant, Anthony Brown [a/k/a Tony Brown and Ann Ong, and d/b/a 1700 Cuts Technology and Life for Greatness] ("Defendant"), for the unauthorized use or publication of communications services in violation of Section 705 of the Federal Communications Act of 1934, as amended, ("Communications Act") (47 U.S.C. § 605), and for trademark counterfeiting and infringement in violation of the Lanham Act (15 U.S.C. § 1114).[1]  See Plaintiffs' Complaint [Dkt. 1].  In short, the Defendant is using counterfeits and infringements of ABS-CBN's trademarks in connection with his illegal promotion and sale of "Smart" TV boxes that have been designed or modified to circumvent ABS-CBN's encryption technology to enable his customers to unlawfully intercept and access ABS-CBN's copyrighted programming without compensating ABS-CBN (these illegal devices and the unauthorized use or publication of ABS-CBN's programming are hereinafter referred to as "Pirate Boxes" or "Pirate Equipment," and "Pirate Services," respectively).

On December 20, 2019, ABS-CBN moved the Court to allow substitute service on the Defendant [Dkt. 7], since previous attempts to serve him in person at 16301

---

[1]    ABS-CBN has also asserted a claim for communications theft under Section 134.002 of the Texas Civil Practice & Remedies Code, which incorporates Section 31.12 of the Texas Penal Code (the "State Claim").  Since the analysis of liability for ABS-CBN's State Claim is generally the same as that for its Communications Act claims, the State Claim will not be addressed separately in this Motion.

Wimberly Lane, Rosharon, Texas 77583 ("Wimberly Lane Location" or "Location") – which, upon information and belief, is where he resides and runs his illegal operation – were unsuccessful because (1) the Defendant was able to actively evade service on at least one occasion by misrepresenting his true identity to the process server; and (2) the Location is surrounded by a fence bearing multiple "no trespass" signs with a locked gate at the entrance of the driveway leading up to the trailer home on the property, making the Defendant's residence virtually inaccessible.  See the Declaration of Eric Johnson [Dkt. 7-1, ¶¶ 4-9].

On January 2, 2020, the Court entered an order ("Order") authorizing ABS-CBN to effect service on the Defendant by, among other things, "leav[ing] a copy of the service package[2] with a person over the age of 16 at [Defendant's] residence located at 16301 Wimberly Lane, Rosharon, Texas 77583 ...."  See Dkt. 8.

On January 9, 2020, the Defendant was duly served with process in accordance with the Court's Order when Plaintiffs' process server left a copy of the Service Package at the Wimberly Lane Location with James Mumford – an adult, who owns and resides at the Location.[3]  See Plaintiffs' Proof of Service on Defendant Anthony Brown [Dkt. 9].

---

[2]    Pursuant to the Order, the service package was to contain "(i) the summons; (ii) original complaint and exhibits; (iii) civil cover sheet; (iv) order for conference and disclosure of interested parties; (v) plaintiffs' corporate disclosure statement; (vi) Judge Andrew Edison's Court Procedures; and (vii)  [the] order granting substitute service [collectively, the "Service Package"]."  See Dkt. 8.

[3]    ABS-CBN would further note that the Defendant had already received actual notice that he was being sued in this case on December 11, 2019, when the process server, Eric Johnson, apprised him of this fact, but the Defendant lied about his true identity to evade service.  See the Declaration of Eric Johnson [Dkt. 7-1, ¶¶ 5-8].

Though his answer was due by January 30, 2019, the Defendant failed to timely answer or otherwise respond to Plaintiffs' Complaint. Consequently, ABS-CBN requested that the Clerk of this Court enter a default against the Defendant pursuant to Rule 55(a) of the Federal Rules of Civil Procedure ("Rule(s)") [Dkt. 11], and a default was correspondingly entered against the Defendant on February 25, 2020 [Dkt. 13].

Since the Defendant has still failed to respond to Plaintiffs' Complaint or otherwise enter an appearance in this case, ABS-CBN now seeks entry of a Final Default Judgment and Permanent Injunction ("Judgment") against the Defendant pursuant to Rule 55(b)(2).[4] By virtue of his default, the Defendant is deemed to have admitted the well-pleaded factual allegations contained in Plaintiffs' Complaint (except those relating to the amount of damages), thereby establishing his liability to ABS-CBN for the unauthorized use and publication of communications services in violation of 47 U.S.C. § 605 (the "Communications Act Claims"), and for willful trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114 (the "Lanham Act Claims"). See, e.g., J & J Sports Prods., Inc. v. Tejada, 2014 WL 869218 (W.D. Tex. Mar. 4, 2014).

For the reasons set forth in detail below, ABS-CBN hereby seeks a Judgment awarding Plaintiffs with (1) a permanent injunction enjoining further violations; and (2) statutory damages under both 47 U.S.C. § 605(e)(3)(C)(i)(II) and 15 U.S.C. § 1117(c).

---

[4] In compliance with Fed. R. Civ. P. 55(b)(2) and 50 U.S.C. § 3931, ABS-CBN affirms that the Defendant is neither an infant nor incompetent, and that he is not currently in the U.S. military service, nor was he at the time this action was filed or at any time during the four (4) month period prior thereto. See Appendix ("App.") Ex. A – Abbott Decl. ¶ 3, pp. 1-2.

## II.  ISSUES TO BE RULED UPON

1.     Should a final default judgment be entered against the Defendant that (1) permanently enjoins him from, among other things, (i) promoting and selling his Pirate Boxes and Pirate Services, and (ii) counterfeiting and infringing ABS-CBN's trademarks; and (2) awards ABS-CBN statutory damages under both 47 U.S.C. § 605(e)(3)(C)(i)(II) and 15 U.S.C. § 1117(c)?

2.     How much should ABS-CBN be awarded in (1) statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); and (2) statutory damages under 15 U.S.C. § 1117(c)?

## III.  STANDARD OF REVIEW

The entry of a default judgment is entrusted to the sound discretion of the district court.  See, e.g., Arthur F. Williams, Inc,. v. Helbig, 208 F.R.D. 41, 44 (E.D.N.Y. 2002); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993).  Accordingly, the standard for reviewing the entry of a default judgment is whether there was an abuse of discretion. See Lacy v. Sitel Corp., 227 F.3d 290, 292 (5th Cir. 2000).

Likewise, both Section 605(e)(3)(C)(i)(II) of the Communications Act and Section 1117(c) of the Lanham Act give district courts broad discretion over the amount of statutory damages awarded in cases brought under these Acts.  See, e.g., Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 852-53 (11th Cir. 1990) (district courts have great discretion in awarding statutory damages within the statutory limits of the Communications Act); Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc., 269 F.3d 523, 527 (5th Cir. 2001) ("[Section] 1117 of the Lanham Act gives the district court broad discretion over the amount of damages.").  The

4

standard for reviewing the sufficiency of evidence supporting an award of statutory damages under both Sections 605(e)(3)(C)(i)(II) and 1117(c) is whether there was an abuse of discretion.  See, e.g., Cable/Home, 902 F.2d at 852; Dial-One, 269 F.3d at 527.

## IV.  SUMMARY OF THE ARGUMENT

ABS-CBN's claims against the Defendant under both the Communications Act and the Lanham Act are established by virtue of his default.  See, e.g., U.S. for the use of M-CO Constr., Inc.v. Shipco General Inc., 814 F.2d 1011, 1014 (5th Cir. 1987).  Having established its claims, ABS-CBN seeks (1) a permanent injunction enjoining the Defendant from committing further violations; and (2) statutory damages under both Section 605(e)(3)(C)(i)(II) of the Communications Act and Section 1117(c) of the Lanham Act.

The issuance of a permanent injunction is a proper remedy for violations of both the Communications Act and the Lanham Act.  See, e.g., 47 U.S.C. § 605(e)(3)(B)(i); Wescosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (permanent injunctive relief is the remedy of choice for trademark infringement cases).  Accordingly, ABS-CBN requests a permanent injunction enjoining the Defendant from, among other things, continuing to (1) illegally promote and sell his Pirate Boxes and Pirate Services; and (2) counterfeit and infringe ABS-CBN's trademarks.

Plaintiffs are also entitled to elect statutory damages in both Communications Act cases and federal trademark counterfeiting cases such as this.  See 47 U.S.C. § 605(e)(3)(C)(i)(II); 15 U.S.C. § 1117(c).  In particular, Section 605(e)(3)(C)(i)(II) provides that an aggrieved party may recover not less than $10,000 nor more than

$100,000 for each violation of Section 605(e)(4) where the violator is selling devices such as the Pirate Boxes at issue in this case.  Likewise, Section 1117(c)(2) provides that when the defendant's counterfeiting actions are *willful* as they are here, the court may impose up to $2,000,000 per counterfeit mark per type of good or service infringed.

Although the Defendant's default has deprived ABS-CBN of the discovery necessary to determine the number violations he committed, the Defendant's illegal operation was, by his own admissions, widespread.  While the evidence indicates that the Defendant's sales of Pirate Boxes and Pirate Services were considerable, ABS-CBN only seeks (1) the maximum award of $100,000 for one violation of Section 605(e)(4) (namely, the Pirate Box that the Defendant sold ABS-CBN's investigator on October 15, 2019, and that ABS-CBN's analysis confirmed was illegally modified to intercept its copyrighted programming); and (2) a total award of $2,000,000 under Section 1117(c) for the two (2) counterfeit ABS-CBN Registered Marks that the Defendant willfully used to promote and sell his Pirate Boxes and Pirate Services.  As set forth in Sections VII(4) below, the amounts requested are reasonable under the facts presented, less than or commensurate with the amounts awarded in similar cases, and fairly achieve the legislative purpose of such awards: compensation, punishment, and deterrence.

## V.  RELEVANT BACKGROUND FACTS

### 1.  Plaintiffs' World-Renowned Entertainment Services, Satellite TV Broadcasts, and Encryption Technology

ABS-CBN is the largest media and entertainment company in the Philippines.  See Complaint at ¶ 20 [Dkt. 1, p. 6]; App. Ex. B – Lawrence Decl. ¶ 4, p. 2.  With its twelve

large production studios, ABS-CBN produces over 2,430 hours of original content every year, including movies, daily television series, documentaries, news and current affairs programs, musical and variety shows, game shows, reality shows, music video programs, and AM and FM radio shows.  Id.  Every day, ABS-CBN's programming is broadcast worldwide by its agreements with dozens of cable companies' premium channels, telecom provider partnerships, and Internet subscription services; and through its own 24-hour cable and satellite service, which offers pay-per-view programming.  Id.

ABS-CBN transmits its programming by relaying direct signals from within the Philippines up to satellites in orbit above the Earth.  See Complaint at ¶ 21 [Dkt. 1, p. 6]; App. Ex. D – Fuente Decl. ¶ 3, p. 2.  These signals are then broadcast back down to Earth.  Id. Thereafter, ABS-CBN's programming is received by authorized subscribers through the use of a private satellite dish connected to an indoor satellite box, which is then connected by a cable to a television monitor.  Id.  This setup allows authorized subscribers to receive their ABS-CBN programming.  Id.

To prevent the unauthorized reception and use of ABS-CBN's broadcasts by individuals who have not paid for ABS-CBN's services, ABS-CBN employs encryption technology to digitally scramble the signal, making it unusable until it is descrambled.  See Complaint at ¶ 22 [Dkt. 1, p. 6]; App. Ex. D – Fuente Decl. ¶ 4, p. 2.  The satellite box is the component that makes descrambling possible.  Id.  Every satellite box has a conditional access subsystem built directly into it, which allows for the descrambling of ABS-CBN's content.  Id.  Each paying customer receives a unique entitlement management message from the satellite feed, which allows the conditional access

7

subsystem to descramble the signal.  <u>Id</u>.  This equipment and technology is referred to herein as the "encryption technology," and constitutes ABS-CBN's technological access control measures for its copyrighted content and communications.  <u>Id</u>.

**2. <u>Plaintiffs' Trademarks</u>**

ABS-CBN has long used the federally registered trademarks "ABS-CBN" (Registration No. 2,334,131) and "TFC" (Registration No. 3,733,072) (collectively, the "ABS-CBN Registered Marks") to identify and distinguish its high-quality services, including its entertainment distribution services.  <u>See</u> Complaint at ¶ 11 [Dkt. 1, p. 4]; App. Ex. B – Lawrence Decl. ¶ 7, pp. 3-4.  True and correct copies of the Certificates of Registration for the ABS-CBN Registered Marks are attached to both Plaintiffs' Complaint and the Lawrence Declaration as **<u>Exhibit 1</u>**.

ABS-CBN has also used the following common law trademark (the "ABS-CBN Common Law Trademark") for many years to identify and distinguish its high-quality products and services, including its broadcasting distribution services:



<u>See</u> Complaint at ¶¶ 15-16, and 19 [Dkt. 1, p. 5]; App. Ex. B – Lawrence Decl. ¶ 8, p. 4.

While plaintiff ABS-CBN International is, and all times relevant to this action has been, the registered owner of the ABS-CBN Registered Marks and the owner of the ABS-CBN Common Law Trademark (collectively, the "ABS-CBN Marks" or "Marks"), plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN

International all share exclusive rights in and to the ABS-CBN Marks, and are all licensed to use and enforce the ABS-CBN Marks.  Id. at ¶¶ 11, 15 and 19 [Dkt. 1, pp. 4-5]; App. Ex. B – Lawrence Decl. ¶ 9, p. 5.  These Marks have never been abandoned by ABS-CBN, and the Defendant has never been licensed or otherwise authorized to use the Marks in any way.  See, e.g., id. at  ¶¶ 13-14, 17-18, and 31 [Dkt. 1, pp. 5 and 8]; App. Ex. B – Lawrence Decl. ¶¶ 11 and 17, pp. 5 and 7-8, respectively.

### 3.  Defendant's Illegal Activities

Again, as set forth in Plaintiffs' Complaint and established by the evidence submitted herewith, the Defendant is engaged in a widespread "piracy" scheme in which he is illegally promoting and selling "Smart" TV boxes that have been designed or modified to circumvent ABS-CBN's encryption technology to enable his customers to unlawfully intercept and access ABS-CBN's copyrighted programming without compensating ABS-CBN.  See, e.g., Complaint ¶¶ 1-2, and 23-54 [Dkt. 1, pp. 1-2 and 7-13].

Moreover, as set forth in the Complaint and reflected in the screenshots that are attached to the Complaint and Lawrence Declaration as **Exhibit 2**, the Defendant is using counterfeits and infringements of ABS-CBN's federally registered trademarks "TFC" and "ABS-CBN" to advertise and promote his Pirate Boxes and Pirate Services on several Facebook.com social media pages, including a Facebook.com account under the name "Ann Ong," his own personal Facebook.com account under the name "Tony Brown," and a business Facebook.com account under the name "Lifeforgreatness."  See, e.g.,

Complaint ¶¶ 27-35 and 68-74 [Dkt. 1, pp. 8-9 and 15-16]; App. Ex. B – Lawrence Decl. ¶¶ 14-16, pp. 6-7.

For instance, on October 15, 2019, ABS-CBN's investigator, Kevin Reyes ("Reyes"), visited the Facebook profile for "Ann Ong," where he saw various posts promoting the Pirate Boxes, including these posts relating to the sale and installation of such boxes: "Sep 19 [2019] have *3 customers install today* for a TV box ... enjoy watching live tv and new movies and old movies Filipinos channels....;" and "Sep 26 [2019] Thanks god we have *5 customers today* ... enjoy ur tv boxes." See App. Ex. C – Reyes Decl. at ¶ 4, p. 2 and **Exhibit 1** thereto (emphasis added).

Consequently, Reyes began communicating that day with "Ann Ong" on Facebook Messenger to purchase a Pirate Box. Id. at ¶ 5, p. 2. "Ann Ong" – who, as discussed below, later identified himself to be [Defendant] "Anthony Brown" – said that a Pirate Box was available for $150 with free shipping, and that it could be shipped to Reyes in Los Angeles, California. Id. In fact, "Ann Ong" stated "I hope you can also *refer more* when you have the box and then *I give you a cut in the market in California*." Id. (emphasis added).

"Ann Ong" provided Reyes with a PayPal profile (Akb1981, which listed the user as "Anthony Brown"), and confirmed that payment should be sent to "Anthony Brown." Id. at ¶ 6, p. 2. "Ann Ong" further told Reyes that his company's name was 1700 Cuts Technology, and he provided Reyes with a PayPal invoice for the Pirate Box from 1700 Cuts Technology, which listed its address as "*16301 Wimberly Lane, Rosharon, Texas 77583*, and its email address as "lifeforgreatness@gmail.com." Id. (emphasis added).

10

Later that day, Reyes paid $150 to 1700 Cuts Technology via PayPal for the Pirate Box, and "Ann Ong" confirmed to Reyes that the package had been shipped and provided him with a USPS tracking number.  Id. at ¶ 7, p. 3.  Significantly, "Ann Ong" also made the following admissions to Reyes via Facebook Messenger: (1) in response to Reyes' inquiry as to whether it was possible to ship another purchase to Florida, "Ann Ong" told Reyes that "*I can ship anywhere*" and "*we are worldwide*;" (2) in response to Reyes' inquiry as to whether the TV boxes are hacked into for pirating, "Ann Ong" told Reyes that "*I program them [with code]*," and "*[I work with] a distributor in Kuwait*;" and (3) in response to Reyes' inquiry as to whether "Anthony Brown" is the distributor, "Ann Ong" told Reyes "*[n]o Anthony Brown is me*."  Id. (emphasis added).

On October 17, 2019, Reyes received a package containing the Pirate Box, which stated that it was from "*Anthony Brown, 1700 Cuts Technology, 16301 Wimberly Lane, Rosharon, Texas 77583*."   Id. at ¶ 8, p. 3 and **Exhibits 2-3** thereto (emphasis added). This Pirate Box was inspected on November 25, 2019 by ABS-CBN International's Global Head of Engineering, Cornelio dela Fuente ("Fuente"), whose job responsibilities include analyzing the sources of the illegal acquisition and distribution of ABS-CBN content.  See App. Ex. D – Fuentes Decl. at ¶ 5, p. 3.  Based on his inspection, Fuente concluded that the Pirate Box had been altered or programmed to receive ABS-CBN's live content without ABS-CBN's authorization.  Id. at ¶ 8, pp. 3-4.[5]

---

[5]     ABS-CBN would note that Reyes subsequently purchased and received a second box from the Defendant that ABS-CBN assumes has been illegally modified to intercept ABS-CBN's programming, but it has not yet been inspected by Fuentes. See App. Ex. C – Reyes Decl. at ¶ 9, p. 4 and **Exhibit 4** thereto.

# VI.  ARGUMENT

## 1.  Factual Allegations in Plaintiffs' Complaint are Deemed Admitted

Upon the entry of default, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true. See Shipco Gen., Inc., 814 F.2d at 1014; U.S. v. Madzima, No. 3:08-CV-1043, 2009 U.S. Dist. LEXIS 74782, at *2 (N.D. Tex. Aug. 21, 2009); 10 Moore's Federal Practice §55.12[1] (3d Ed. 2002).  Further, a party's default is deemed to constitute a concession of all well-pleaded allegations of liability.  See id.; see also Crawford v. Lee, No. 3:10-CV-1499, 2011 U.S. Dist. LEXIS 55953 (N.D. Tex. May 24, 2011).  Accordingly, by his default, the Defendant has conceded all well-pleaded allegations of Plaintiffs' Complaint [Dkt. 1].

## 2. ABS-CBN has Established Defendant's Liability

### (i) Communications Act Claims

As set forth in paragraph 45 of the Plaintiffs' Complaint, 47 U.S.C. § 605(a) prohibits the unauthorized publication or divulgence of the existence, contents, substance, purport, effect, or meaning thereof, of any transmissions or receptions, or *assisting in such unauthorized publication or divulgence of transmissions or receptions*, of various communications by radio[6] or wire, such as the ABS-CBN communications at issue here. See 47 U.S.C. § 605(a) (emphasis added); Complaint at ¶ 45 [Dkt. 1, p. 11]; see, e.g.,

---

[6]    For purposes of Section 605(a), "radio" transmissions refer to communications sent over-the-air via radio waves or *satellite*, such as the ABS-CBN communications at issue in this case.  See, e.g., Charter Communications Entertainment I, DST v. Burdulis, 460 F.3d 168, 173 (1st Cir. 2006); Complaint at ¶¶ 21-22 [Dkt. 1, pp. 6-7].

ON/TV of Chicago v. Julien, 763 F.2d 830, 843-44 (7th Cir. 1985) (selling decoder devices *assists* in receiving communications protected by Section 605(a)).

Targeting the upstream manufacturers and distributors of the decryption devices that make these violations possible, Section 605(e)(4) further provides significant criminal penalties for – and Section 605(e)(3)(C)(i)(II)] *increases* by *tenfold* the applicable range of statutory damages that may be awarded against – any person who, like the Defendant:

> manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other *device or equipment*, *knowing or having reason to know* that the device or equipment is *primarily of assistance in the unauthorized decryption of satellite cable programming*, or direct-to-home satellite services, or is intended for any other activity prohibited by § 605(a)....

See 47 U.S.C. § 605(e)(4) (emphasis added); DIRECTV, Inc. v. Montes, 338 F. Supp. 2d 352, 356 (D. Conn. 2004); DIRECTV, Inc. v. Atkins, 320 F. Supp. 2d 474, 475-76 (W.D. Va. 2004) (defendants violated Section 605(e)(4) by purchasing and redistributing electronic devices that allow end users to circumvent DIRECTTV'v encryption measures and access satellite programming without paying for it). Section 650(a) and Section 605(e)(4) are separate violations. See DirectTV, Inc. v. Walsh, 540 F. Supp. 2d 553, 559-60 (M.D. Penn. 2008).

In this case, ABS-CBN alleges, among other things, that:

1.       Without ABS-CBN's authorization, Defendant publishes and/or divulges the contents of ABS-CBN's protected communications to persons not permitted to receive such communications. See Complaint at ¶¶ 46-48 and 50 [Dkt. 1, pp. 11-12].

13

2.      Defendant has engaged in the modification, import, sale, and/or distribution of the Pirate Equipment, which is primarily intended to publish and divulge ABS-CBN's protected communications as Pirate Services to persons not intended to receive such communications via circumvention of ABS-CBN's encryption technology.  Id. at ¶¶ 46 and 49 [Dkt. 1, pp. 11-12].

3.      Defendant has engaged in these activities *willfully* and *for his own commercial advantage and/or private financial gain*, and with *full knowledge of the primary nature of such Pirate Equipment and Pirate Services*, as described above.  Id. at ¶¶ 46 and 50 [Dkt. 1, pp. 11-12].

4.      ABS-CBN has and will continue to sustain irreparable harm, injury, and monetary damages caused by Defendant's unlawful conduct, absent the entry of an injunction.  Id. at ¶¶ 50-53 [Dkt. 1, pp. 12-13].

As discussed in Section VI(1) above, all of these well-pleaded allegations are deemed admitted by the Defendant's default.  Accordingly, ABS-CBN's well-pleaded allegations, together with the evidence submitted in support of this Motion (see Section V(3) above), firmly establish that (1) the Defendant is liable to ABS-CBN for its claims under both Sections 605(a) and 605(e)(4); and (2) the Defendant's violations were committed *willfully*[7] and for purposes of his own *direct or indirect commercial advantage*

---

[7]      The Supreme Court has defined "willful" in the context of a civil statute as conduct showing "disregard for the governing statute and an indifference for its requirements." TransWorld Airlines, Inc.  v. Thurston, 105 S. Ct. 613, 625 (1985).  For purposes of both the Communications Act and Lanham Act claims in this action, the Defendant's *willfulness* is not only established by virtue by his default, but also by his acts and admissions (see Section V(3) above), including his failure to appear and defend

*or private financial gain*. See also Complaint at ¶ 49 [Dkt. 1, p. 12] (Defendant's illegal actions constitute violations of Section 605(a)).

**(ii)  Lanham Act Claims**

As set forth in paragraph 67 of the Complaint, 15 U.S.C. § 1114 prevents the use in commerce of any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, and/or advertising of any goods or services on or in connection with which such use is likely to cause confusion, mistake, or to deceive. See 15 U.S.C. § 1114; Complaint at ¶ 67 [Dkt. 1, p. 15].

To establish a claim for infringement or counterfeiting of trademarks under the Lanham Act, a plaintiff must show: (1) ownership in a legally protectable mark, and (2) infringement by demonstrating a likelihood of confusion. Coach, Inc. v. Brightside Boutique, 2012 WL 32941 (W.D. Texas January 6, 2012) (quoting Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 236 (5th Cir 1998)).

With respect to the first prong, ABS-CBN has pleaded, and introduced evidence verifying, its ownership and registration with the United States Patent and Trademark Office of the ABS-CBN Registered Marks. See Complaint at ¶¶ 11 and 19 [Dkt. 1, pp. 4-5] and Exhibit 1 thereto [Dkt. 1-1]; App. Ex. B – Lawrence Decl. ¶ 7, pp. 3-4. The registrations of the ABS-CBN Registered Marks are *prima facie* evidence of the validity of the ABS-CBN Registered Marks and ABS-CBN's exclusive right to use these

---

himself against ABS-CBN's allegations of willful misconduct. See, e.g., Arista Records, Inc. v. Beker Enter.Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (willfulness may be inferred by the defendant's failure to appear and defend).

trademarks in commerce in connection with the services identified in the registrations. See 15 U.S.C. § 1057(b) (2000).  ABS-CBN has identified two (2) of its registered trademarks, "TFC" and "ABS-CBN," that the Defendant has counterfeited to use in the promotion and sale of his Pirate Equipment and Pirate Services.  See Section V(3) above.

With respect to the second prong, courts in the Fifth Circuit have generally recognized that when there is a counterfeit mark, likelihood of confusion is clear.  See Microsoft Corp. v. Wholesale Club, Inc., 129 F. Supp.2d 995, 1007 (S.D. Tex. 2000).

In this case, ABS-CBN alleges, among other things, that:

1.     Defendant has used counterfeits, copies, and/or colorable imitations of the ABS-CBN Marks in connection with his advertisement, promotion, offers to sell, and sale of the Pirate Equipment and Pirate Services at issue herein. See, e.g., Complaint at ¶¶ 68-69 [Dkt. 1, pp. 15-16].

2.     Defendant's counterfeiting and infringing use of the ABS-CBN Marks is *willful*, and is likely to cause and actually is causing confusion, mistake, and deception among members of the general public as to the origin and quality of the Pirate Equipment and Pirate Services.  Id. at ¶¶ 33, 39 and 70 [Dkt. 1, pp. 9-10 and 16].

3.     ABS-CBN has and will continue to sustain irreparable harm, injury, and monetary damages caused by Defendant's conduct, absent the entry of an injunction.  Id. at ¶¶ 71 and 73 [Dkt. 1, p. 16]

Again, all of these well-pleaded allegations are deemed admitted by the Defendant's default.  Accordingly, ABS-CBN's well-pleaded allegations, together with the evidence submitted in support of this Motion (see Section V(3) above), have also

16

established the Defendant's liability to ABS-CBN for its claims of willful trademark counterfeiting and infringement under the Lanham Act.  See also Complaint at ¶ 72 [Dkt. 1, p. 16] (Defendant's illegal actions constitute violations of Section 1114).

### 3.  ABS-CBN is Entitled to a Permanent Injunction

The entry of a permanent injunction is a proper remedy for violations of both the Communications Act and the Lanham Act.   Section 605(e)(3)(B)(i) of the Communications Act specifically provides that "[t]he court may grant ... final injunctions on such terms as it deems reasonable to restrain violations of [the Act]."  47 U.S.C. § 605(e)(3)(B)(i)); see, e.g., International Cablevision, Inc. v. Cancari, 960 F. Supp. 28, 31 (W.D.N.Y 1997) (where a defendant has violated the Communications Act, "permanent injunctive relief is appropriate" to enjoin future violations of the Act).

Likewise, a plaintiff is entitled to a permanent injunction under the Lanham Act to prevent any future trademark infringement by a defendant.  See 15 U.S.C. § 1116; see, e.g., Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 549-50 (5th Cir. 1998).  In fact, injunctive relief is one of the standard remedies in a trademark infringement case.  See, e.g., Wescosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (in granting a permanent injunction, the court recognizes that "[i]njunctive relief is the remedy of choice for trademark ... cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").

In this Circuit, permanent injunctive relief is appropriate, even in the default context, if the plaintiff demonstrates: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and

(4) that the injunction will not disserve the public interest." Coach, Inc. v. Linda's Accesorios Y Cellulares, No. 3:11-CV-0496, 2011 U.S. Dist. LEXIS 71351, at *4 (N.D. Tex. June 30, 2011) (citing DSC Comms. Corp. v. DGI Tech., Inc., 81 F.3d 597, 600 (5th Cir. 1996)).

By virtue of the Defendant's default, ABS-CBN has succeeded on the merits of this action, and has established that it has no remedy at law and will continue to suffer irreparable harm if the Defendant is not permanently enjoined from, among other things, selling his Pirate Boxes and Pirate Services, and infringing ABS-CBN's Marks. See, e.g., Caribbean Produce Exchange, 65 F.R.D. at 48 (by its default, a defendant's liability to plaintiff is deemed established); Complaint ¶ 41 [Dkt. 1, p. 11] ("ABS-CBN has no adequate remedy at law."); App. Ex. B – Lawrence Decl. ¶ 13, p. 6 (Defendant's misconduct causes irreparable harm to ABS-CBN's goodwill); Complaint ¶¶ 42, 53 and 73 [Dkt. 1, pp. 11, 13 and 16] (without a permanent injunction, ABS-CBN will continue to suffer irreparable injury).

Moreover, the irreparable harm to ABS-CBN unquestionably outweighs any damage that could possibly result to the Defendant from the issuance of the permanent injunction requested since (1) the Defendant's sales of Pirate Equipment and Pirate Services are *criminal* acts (see Sections 605(e)(2) and (4)) that wrongfully deprive ABS-CBN of revenues to which it is entitled; and (2) the Defendant has absolutely no lawful interest in the ABS-CBN Marks that he's infringing. Indeed, the public interest is always served by requiring compliance with Congressional statutes such as the Communications Act and the Lanham Act, and by enjoining violations of these Acts. See, e.g., Quantum

18

Fitness Corporation v. Quantum Lifestyle Centers, LLC, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999) ("the public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."); see also ON/TV of Chicago v. Julian, 763 F.2d 839, 844 (7th Cir. 1985) ("enjoining the sale of pirate decoders [which violates the Communications Act] would further the public interest by protecting the viability of the subscription television industry.").

For these reasons, ABS-CBN respectfully submits that the Defendant should be permanently enjoined from, among other things, promoting and selling his Pirate Boxes and Pirate Services, and infringing upon ABS-CBN's Marks, as set forth in the proposed Judgment that is submitted as an attachment to this Motion.

## 4. **ABS-CBN is Entitled to Recover Statutory Damages**

### (i) **Communications Act Claims**

Section 605(e)(3)(C) provides that plaintiffs may elect to recover either (1) their actual damages and any profits of the violator attributable to the violation; or (2) statutory damages.  See 47 U.S.C. §605(e)(3)(C).  In cases such as this where ABS-CBN has elected to recover statutory damages, Section 605(e)(3)(C)(i)(II) provides that plaintiffs may recover statutory damages in the sum of (1) not less than $1,000 nor more than $10,000, as the court considers just, for *each* violation of Section 605(a); and (2) not less than $10,000 nor more $100,000, as the court considers just, for *each* violation of Section 605(e)(4), which again, targets people like the Defendant who provide the illegal devices that make communications theft possible. See 47 U.S.C. § 605(e)(3)(C)(i)(II).  Moreover,

in cases such as this where the violations were committed "*willfully* and for purposes of *direct or indirect commercial advantage or private financial gain*," the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for *each* violation of Section 605(a).   See 47 U.S.C. §605(e)(3)(C)(ii).

Again, by virtue of the Defendant's default and as corroborated by the additional evidence submitted in support of this Motion, ABS-CBN has established that (1) the Defendant is liable to ABS-CBN for violations of both Sections 605(a) and 605(e)(4); and (2) the violations were committed *willfully* and for purposes of *direct or indirect commercial advantage or private financial gain*."   See Section VI(2)(i) above. Accordingly, ABS-CBN is entitled to recover statutory damages in the sum of (1) $1,000 to $10,000 for *each* violation of Section 605(a), which may be increased by up to $100,000 *per* violation because the violations were committed *willfully* and for *financial gain*; and (2) $10,000 to $100,000 for *each* violation of Section 605(e)(4).

By choosing to default, however, the Defendant has deprived ABS-CBN of the opportunity to conduct the discovery necessary to determine the *number* of Section 605(a) and Section 605(e)(4) violations that the Defendant willfully committed; and hence, the full range of statutory damages to which ABS-CBN may be entitled. Nevertheless, in fashioning an award, the Court should consider the breadth and patent illegality of the Defendant's piracy operation, and what Congress was trying to accomplish by providing statutory damages in these types of cases.

While ABS-CBN only analyzed one of the "Smart" TV boxes that Reyes purchased from the Defendant and determined that it had been unlawfully modified to receive ABS-CBN's programming without its consent, the evidence presented (including the Defendant's own admissions) demonstrate that (1) the Defendant's illegal operation was widespread; (2) he fully intended to expand his operation and increase his illicit sales; and (3) he surely sold many more Pirate Boxes than the one that was purchased and analyzed by ABS-CBN.  See Section V(3) above.

Again, the Defendant told Reyes that (1)  "we are worldwide;" (2) "[he] can ship anywhere;" (3) "[he works with] a distributor in Kuwait;" and (4) he would give Reyes a cut of the California market if Reyes could refer more illicit business to him. In fact, the Defendant's "Ang Ong" Facebook posts indicate that he sold three (3) and five (5) Pirate Boxes, respectively, on just September 19, 2019 and September 26, 2019 alone.  Id. Moreover, the Defendant undoubtedly knew that his scheme was illegal, as evidenced by (1) his admission that he was the person who illegally modified the Pirate Boxes; (2) his use of aliases such as "Ann Ong" in the marketing and sale of his Pirate Boxes and Pirate Services; (3) his efforts to evade service by misrepresenting his true identity to the process server; and (4) his decision to default rather than appear to defend himself in this action.  Consequently, the Defendant's illegal actions alone call for a significant statutory damage award in this case.  See Sections I and V(3) above.

A significant award is also necessary here to achieve the very purpose of the Communications Act.  Congress recognized that a violation of this piracy statute is theft, which:

deprives the cable industry of millions of dollars of revenue each year which it should otherwise be receiving ... poses a major threat to the economic viability of cable operators and cable programmers, and creates unfair burdens on cable subscribers who are forced to subsidize the benefits that other individuals are getting by receiving cable service without paying for it.

See J & J Sports Productions, Inc. v. Segura, 2018 WL 1868271, at *5 (N.D. Cal. 2018); see, e.g., Julien, 763 F.2d at 843 ("Sales of devices designed solely to intercept protected communications *threaten the viability of the subscription television industry* and there is *no countervailing social or policy consideration that would justify these sales.*") (emphasis added).  In fact, Congress considered Section 605(e)(4) violations like those at issue here so serious that it imposed criminal sanctions of up to $500,000 in fines, and/or up to five (5) years in prison, for each illegal device *modified, sold, etc*.  See 47 U.S.C. §605(e)(4) ("the prohibited activity ... as it applies to *each* such device shall be deemed a *separate* violation.") (emphasis added).  Accordingly, in addition to compensating the aggrieved party whose actual damages, like the violator's profits, often cannot be determined because violators seldom keep accurate records and frequently default, "a primary goal of piracy awards is deterrence, and the piracy statutes contemplate both specific and general deterrence."  See Segura, 2018 WL 1868271, at *5; J & J Sports Productions, Inc. v. J.R. 'Z Neighborhood Sports Bar & Grille, 2010 WL 1838432, at *2 (D.S.C. April 5, 2010) ("a *firm judicial hand* is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately.") (emphasis added).  Moreover, the court's discretion in determining an appropriate statutory award is limited *only* by the minimum and maximum statutory amounts specified in Section 605. See, e.g., Network Productions, 902 F.2d at 852-53.

While the evidence here indicates that the Defendant's sales of Pirate Equipment and Pirate Services were considerable, ABS-CBN is only seeking statutory damages for the sale of the one (1) Pirate Box that ABS-CBN analyzed and confirmed to be illegally modified.  For this violation of Section 605(e)(4), ABS-CBN respectfully requests an award in the maximum amount of $100,000, which ABS-CBN submits is fair and reasonable under the circumstances.  In fact, it would be the <u>minimum</u> amount of statutory damages to which ABS-CBN would be entitled under Section 605(e)(3)(C)(i)(II) if ABS-CBN had been able to conduct some minimal *discovery* simply to *confirm* that the eight (8) boxes that the Defendant sold on just September 19th and September 26th alone (as referenced in "Ang Ong's" Facebook posts), and the second box that the Defendant sold Reyes that has not yet been analyzed, had also been illegally designed or modified to intercept ABS-CBN's programming without its consent.[8]  It is also $400,000 *less* than the maximum fine that the Defendant would be facing if this were a *criminal* action.  <u>See</u> 47 U.S.C. §605(e)(4).

ABS-CBN further submits that a statutory damage award of $100,000 in this case would serve the very purpose of Section 605(e)(3)(C)(i)(II) by (1) compensating ABS-CBN for revenues that it unquestionably lost because of the Defendant's theft; and (2) sending a clear message to the Defendant and others like him that communications theft will not be tolerated, and that if you get caught, you cannot simply default in order to avoid accountability and shelter your ill-gotten revenues.

---

[8]     That would make *at least* 10 confirmed sales of Pirate Boxes multiplied by the *minimum* statutory award of $10,000 per violation.

23

### (ii)  Federal Trademark Counterfeiting Claims

ABS-CBN also elects to recover statutory damages for its federal trademark counterfeiting claims pursuant to 15 U.S.C. § 1117(c).  See 15 U.S.C. § 1117(c) ("In a case involving the use of a counterfeit mark ... the plaintiff may elect ... to recover [statutory damages] instead of actual damages and profits ....").  Section 1117(c)(1) provides for an award of not less than $1,000 nor more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.  See 15 U.S.C. § 1117(c)(1).  However, in cases like this where the defendant's counterfeiting actions are found to be *willful*, the court has discretion to impose damages of up to $2,000,000 per counterfeit mark per type of good or service sold, offered for sale, or distributed.  See 15 U.S.C. § 1117(c)(2).

Similar to the Communications Act, Congress enacted the statutory damages remedy in trademark counterfeiting cases to (1) compensate trademark owners for losses since it's often impossible to prove actual damages or a defendant's profits given the deception routinely practiced by counterfeiters; (2) punish wrongdoers; and (3) deter future misconduct.  See e.g., Gucci America, Inc. v. Duty Free Apparel, Ltd., 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004), overruled on other grounds, Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 106 (2d Cir. 2012) (quoting S. Rep. 104-177, at 10 (1995) ("Congress added the statutory damages provision of the Lanham Act in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept … making proving actual damages in these cases extremely difficult if not impossible."); Joint Statement of Trademark Counterfeiting Legislation, 130 Cong. Rec.

24

H12076, H12083 (daily ed. Oct. 10, 1984); <u>H-D U.S.A., LLC v. SunFrog, LLC</u>, 311 F. Supp. 3d 1000, 1046 (E.D. Wis. 2018) ("An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest" in deterring counterfeiting).

Likewise, district courts have broad discretion in setting the amount of statutory damages awarded under the Lanham Act.  <u>See</u>, <u>e.g.</u>, <u>Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc.</u>, 269 F.3d 523, 527 (5th Cir. 2001); <u>Rolex Watch U.S.A., Inc. v. Meece,</u> 158 F.3d 816, 824 (5th Cir. 1998).  In fact, an award of statutory damages is appropriate even if a plaintiff is unable to prove any actual damages caused by the defendant's infringement.  <u>See</u> <u>Ford Motor Co. v. Cross</u>, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006 ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are *nominal* or *non-existent*.") (emphasis added); <u>Phillip Morris U.S.A., Inc. v. Liu</u>, 489 F. Supp. 2d 1119, 1123-24 (C.D. Cal. 2007) (noting that even if the plaintiff suffered only *nominal* damages, it's permissible to award *maximum* statutory damages to compensate the plaintiff, punish the defendant for his willful violations, and deter the defendant and other counterfeiters).

Although the Lanham Act does not provide courts with guidelines as to how to select a damage figure within the statutory range, courts generally consider the same factors as in cases brought under the Copyright Act: the willfulness of the defendant's conduct, the value of the trademark, whether the defendant cooperated in providing the necessary records to access the value of the infringing material, the deterrent effect of an

award on the defendant and others, and the losses sustained by the plaintiff.  See, e.g.,

Cartier Intern. B.V. v. Ben-Menachem, 2008 WL 64005, *14 (S.D.N.Y. 2008).

Here, the Defendant is *willfully* using two (2) counterfeit ABS-CBN Registered

Marks ("TFC" and "ABS-CBN") in his promotion and sale of two (2) types of goods or

services (Pirate Boxes and Pirate Services).  Indeed, there is absolutely no legitimate

reason for the Defendant to be using counterfeit ABS-CBN Registered Marks in this

manner other than to trade on ABS-CBN's world-renowned reputation to unjustly enrich

himself.  See App. Ex. B – Lawrence Decl. ¶¶ 10-13, pp. 5-6 (ABS-CBN has spent

millions promoting its services and associated Marks, which have come to symbolize

ABS-CBN's enormous goodwill throughout the world, and are of great value to ABS-

CBN's overall business).  By doing so, ABS-CBN has unequivocally lost revenue that it

was entitled to receive, and its Marks, reputation and goodwill have undoubtedly been

harmed by the Defendant associating these assets with inferior equipment that provides

pirated content.  Id. at ¶¶ 20-21, pp. 8-9.  However, we'll never know the full extent of

the damage caused by the Defendant's misconduct because he has chosen to default in

hopes of avoiding accountability.

For these reasons, ABS-CBN respectfully requests a statutory damage award of

$500,000 for each of the two counterfeit ABS-CBN Registered Marks that the Defendant

*willfully* used to promote and sell his two types of goods or services (Pirate Boxes and

Pirate Services) – for a total award of $2,000,000.  This amount is substantially less than

the maximum amount ($8,000,000) that could be awarded under the circumstances; it is

below or commensurate with amounts awarded in similar cases;[9] and it fairly achieves the legislative purposes of Section 1117(c) for the same reasons discussed in Section VI(4)(i) above.

## VII. CONCLUSION

For these reasons, ABS-CBN respectfully requests that the Court enter a Final Default Judgment and Permanent Injunction against Defendant in the form attached hereto, awarding Plaintiff, among other things:

(1)  permanent injunctive relief as set forth in the attached proposed Judgment;

(2)  statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II) and 15 U.S.C. § 1117(c) in the sums of $100,000.00 and $2,000,000.00, respectively;

(3)  post-judgment interest on all monetary amounts awarded; and

(4)  such other and further relief to which ABS-CBN may be justly entitled.

Dated: August 12, 2020

Respectfully submitted,

BY:  s/Steven M. Abbott
Steven M. Abbott
State Bar No. 00797825
Federal I.D. No. 9027
Attorney-in-charge for Plaintiffs
510 Bering Drive, Suite 300
Houston, Texas 77057
Telephone: (713) 467-1669
Facsimile:  (713) 467-4936
E-mail: abbottsteven@hotmail.com

---

[9]  See, e.g., ABS-CBN Corp. v. aceshowbiz.me, 0:18-cv-61553 (S.D. Fla. Oct. 18, 2018) (awarding $1,000,000 against *each* defendant for willfully using *one* (1) counterfeit mark for *one* (1) good or service); Philip Morris U.S.A., Inc. v. Castworld Prods., Inc., 219 F.R.D.494, 501-02 (C.D. Cal. 2003) (awarding $2,000,000 for the willful counterfeiting of *two* (2) trademarks for *one* (1) type of product); Philip Morris U.S.A., Inc. v. Lee, 547 F. Supp. 2d. 685, 697 (W.D. Tex. 2008) (awarding $1,000,000 for the willful counterfeiting of *two* (2) trademarks for *one* (1) type of product).