IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **ABS-CBN CORPORATION, et al.,** | § § | |
| Plaintiffs, | § § | |
| V. | § § | CASE NO. 3:19-cv-00397 |
| **ANTHONY BROWN,** | § § § | |
| Defendant. | § § | |

### FINAL DEFAULT JUDGMENT AND PERMANENT INJUNCTION

On this day came on to be heard Plaintiffs' Motion for Entry of a Final Default Judgment and Permanent Injunction Against Defendant, and Memorandum of Law in Support [Dkt. _____] ("Motion"). The Court, having considered the Motion, the declarations and other evidence submitted in support of the Motion, and the other pleadings and papers on file in this case, makes the following findings of fact and conclusions of law:

### Findings of Fact

1. On December 5, 2019, plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International (collectively, "ABS-CBN" or "Plaintiffs") filed this action against the defendant, Anthony Brown [a/k/a Tony Brown and Ann Ong, and d/b/a 1700 Cuts Technology and Life for Greatness] ("Defendant"), for (1) the unauthorized use or publication of communications services in violation of Section 705 of the Federal Communications Act of 1934, as amended, ("Communications Act") (47 U.S.C. § 605); (2) communications theft in violation of

1

Section 134.002 of the Texas Civil Practice & Remedies Code ("Texas Theft Liability Act"), which incorporates Section 31.12 of the Texas Penal Code; and (3) trademark counterfeiting and infringement in violation of the Lanham Act (15 U.S.C. § 1114).

2. ABS-CBN is the largest media and entertainment company in the Philippines. Among other things, ABS-CBN produces movies, television series, AM and FM radio shows, and other programs that are broadcast worldwide each day. ABS-CBN transmits its programming by relaying direct signals from within the Philippines up to satellites orbiting above the Earth, which are then broadcast back down to Earth. Thereafter, ABS-CBN's programming is received by authorized subscribers through the use of a private satellite dish connected to an indoor satellite box, which is then connected by a cable to a television monitor. This setup allows authorized subscribers to receive their ABS-CBN programming.

3. To prevent the unauthorized reception and use of ABS-CBN's broadcasts by individuals who have not paid for ABS-CBN's services, ABS-CBN employs encryption technology to digitally scramble the signal, making it unusable until it is descrambled. The satellite box is the component that makes descrambling possible. Every satellite box has a conditional access subsystem built directly into it, which allows for the descrambling of ABS-CBN's content. Each paying customer receives a unique entitlement management message from the satellite feed, which allows the conditional access subsystem to descramble the signal. This equipment and technology is referred to herein as the "encryption technology," and constitutes ABS-CBN's technological access control measures for its copyrighted content and communications.

4. ABS-CBN has long used the federally registered trademarks "ABS-CBN" (Registration No. 2,334,131) and "TFC" (Registration No. 3,733,072) (collectively, the "ABS-CBN Registered Marks") to identify and distinguish its high-quality services, including its television broadcasting services. ABS-CBN has also used the following common law trademark (the "ABS-CBN Common Law Trademark") in interstate commerce for many years to identify and distinguish its high-quality products and services, including its broadcasting distribution services:



5. While plaintiff ABS-CBN International is, and all times relevant to this action has been, the registered owner of the ABS-CBN Registered Marks and the owner of the ABS-CBN Common Law Trademark (collectively, the "ABS-CBN Marks" or "Marks"), plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International all share exclusive rights in and to the ABS-CBN Marks, and are all licensed to use and enforce the ABS-CBN Marks.

6. The ABS-CBN Marks serve as symbols of ABS-CBN's quality, reputation, and goodwill; have never been abandoned by ABS-CBN; and the Defendant has never been licensed or otherwise authorized to use the Marks in any way.

7. Defendant resides within this judicial district ("District") at 16301 Wimberly Lane, Rosharon, Texas 77583 ("Wimberly Lane Location" or "Location"), he does business in this District, and he committed in this District a substantial portion of the unlawful acts described herein that form the basis of this action.

8. Without ABS-CBN's authorization, Defendant has been publishing and/or divulging the contents of ABS-CBN's protected communications to persons not permitted to receive such communications, and assisting those persons in receiving such communications. Specifically, Defendant has been engaged in a scheme to promote and sell "Smart" TV boxes that have been designed or modified to circumvent ABS-CBN's encryption technology to enable his customers to unlawfully intercept and access ABS-CBN's copyrighted programming without compensating ABS-CBN (these illegal devices and the unauthorized use or publication of ABS-CBN's programming are hereinafter referred to as "Pirate Boxes" or "Pirate Equipment," and "Pirate Services," respectively).

9. Defendant has engaged in the foregoing unlawful activities willfully and for his own commercial advantage and/or private financial gain, and with full knowledge that the Pirate Equipment he is modifying, promoting, and selling is primarily intended to publish and divulge ABS-CBN's protected communications as Pirate Services to persons not intended to receive such communications via circumvention of ABS-CBN's encryption technology.

10. On October 15, 2019, Defendant sold a Pirate Box to ABS-CBN's investigator, Kevin Reyes ("Reyes") for $150.00. Defendant (1) provided Reyes with a PayPal profile (Akb1981, which stated that the user was "Anthony Brown"); (2)

confirmed that payment should be sent to "Anthony Brown;" (3) told Reyes that his company's name was 1700 Cuts Technology; and (4) provided Reyes with a PayPal invoice for the Pirate Box from 1700 Cuts Technology, which listed its address as "16301 Wimberly Lane, Rosharon, Texas 77583, and its email address as "lifeforgreatness@gmail.com.

11. On October 17, 2019, Reyes received a package containing the Pirate Box, which stated that it was from "Anthony Brown, 1700 Cuts Technology, 16301 Wimberly Lane, Rosharon, Texas 77583." On November 25, 2019, this Pirate Box was inspected by ABS-CBN International's Global Head of Engineering, Cornelio dela Fuente ("Fuente"), who confirmed that it had been altered or programmed to receive ABS-CBN's live content without ABS-CBN's authorization.

12. With respect to the size and scope of his unlawful operation, Defendant made the following admissions to Reyes: (1) "I can ship anywhere;" (2) "we are worldwide;" (3) he programs the Pirate Boxes to circumvent ABS-CBN's encryption technology; (4) he works with "a distributor in Kuwait;" and (5) "Anthony Brown is me." Defendant also offered Reyes "a cut in the market in California" if Reyes could refer more Pirate Box sales to Defendant, and posts on Defendant's "Ann Ong" Facebook profile indicate that at least eight (8) of his Pirate Boxes were sold to and/or installed by his customers on just the 19th and 26th of September 2019 alone.

13. Defendant has also knowingly and intentionally used counterfeits and infringements of the ABS-CBN Marks in connection with his Pirate Equipment and Pirate Services to promote, advertise, offer for sale, and sell his Pirate Equipment via the

Internet. Specifically, Defendant has knowingly and intentionally used counterfeits of ABS-CBN Registered Marks "ABS-CBN" and "TFC" to promote and sell his Pirate Equipment and Pirate Services on several Facebook.com social media pages, including his own personal Facebook.com account under the name "Tony Brown," a secondary Facebook.com account under the name "Ann Ong," and a business Facebook.com account under the name "Lifeforgreatness."

14. Defendant's counterfeiting and infringing use of the ABS-CBN Marks is willful, and is likely to cause and actually is causing confusion, mistake, and deception among members of the general public as to the origin and quality of the Pirate Equipment and Pirate Services.

15. At all times relevant hereto, the Defendant has had full knowledge of the unauthorized nature of the Pirate Equipment and Pirate Services, and full knowledge of ABS-CBN's ownership of the ABS-CBN Marks, including its exclusive rights to use and license such intellectual property and the goodwill associated therewith.

16. On December 11, 2019, the Defendant actively evaded service of process by misrepresenting his true identity to ABS-CBN's process server, Eric Johnson, who gave the Defendant actual notice at that time that this suit had been filed against him.

17. On January 9, 2020, the Defendant was duly served with process in accordance with the Court's Order authorizing substitute service [Dkt. 8].

18. On February 25, 2020, the Clerk of this Court duly entered a default against the Defendant because he had failed to respond to Plaintiffs' Complaint or otherwise

appear in this case [Dkt. 13]. At the time of entry of this Judgment, the Defendant has still failed to respond to Plaintiffs' Complaint or otherwise appear in this case.

19. Defendant is neither an infant nor incompetent, and he is not currently in the U.S. military service, nor was he at the time this action was filed on December 5, 2019, or at anytime during the six (6) month period prior thereto.

20. A determination of Defendant's actual profits and the actual damage to ABS-CBN in this case is impossible to compute.

21. ABS-CBN elected to recovery statutory damages for its (1) Communications Act claims pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II); and (2) trademark counterfeiting claims pursuant to 15 U.S.C. §1117(c).

22. The Court finds that a statutory damage award in the amount of $100,000.00 for the Pirate Box that Defendant sold to Reyes in violation of 47 U.S.C. § 605(e)(4) on October 15, 2019, is just and reasonable under the facts presented in this case to fairly achieve the statutory goals of compensating ABS-CBN, punishing Defendant, and deterring Defendant and others from engaging in such misconduct in the future.

23. The Court finds that a statutory damage award in the amount of $500,000.00 for each of the two (2) ABS-CBN Registered Marks that Defendant willfully counterfeited to promote and sell his two (2) types of goods or services (Pirate Equipment and Pirate Services), for a total award of $2,000,000.00, is just and reasonable under the facts presented in this case to fairly achieve the statutory goals of compensating ABS-

CBN, punishing Defendant, and deterring Defendant and others from engaging in such misconduct in the future.

24. ABS-CBN has no adequate remedy at law and has suffered, and will continue to suffer, irreparable harm and monetary damages unless Defendant is permanently enjoined from (1) promoting and selling Pirate Equipment and Pirate Services; and (2) infringing and counterfeiting the ABS-CBN Marks. Such injunctive relief will serve the public interest, and Defendant will not be harmed by being prohibited from engaging in such illegal acts.

25. If any of these findings of fact are found to be conclusions of law, they shall be considered to have been included in the conclusions of law below.

## Conclusions of Law

1. This Court has jurisdiction over the subject matter of this action.

2. Venue is proper in the Southern District of Texas, and this action was properly filed in this District's Galveston Division.

3. Defendant is subject to the jurisdiction of this Court.

4. The ABS-CBN communications at issue in this case are entitled to protection under 47 U.S.C. § 605 and the laws of the State of Texas, and ABS-CBN is an "aggrieved" person or party for purposes of 47 U.S.C. §605.

5. The ABS-CBN Marks are entitled to protection under federal trademark laws and the laws of the State of Texas.

6. As a result of Defendant's default in this action, Defendant is deemed to have admitted the factual allegations in Plaintiffs' Complaint [Dkt. 1], and conceded

liability on all causes of action alleged in Plaintiffs' Complaint.  See, e.g., Chevron Intellectual Prop., LLC v. Allen, No. 7:08-cv-98, 2009 WL 2596610, at *3 (N.D. Tex. Aug. 24, 2009); Caribbean Produce Exchange v. Caribe Hydro-Trailer, Inc., 65 F.R.D. 46, 48 (D.P.R. 1974).  As such, Defendant is liable to ABS-CBN for willful (1) violations of 47 U.S.C. § 605(a) and 47 U.S.C. § 605(e)(4); (2) Section 134.002 of the Texas Civil Practice & Remedies Code, which incorporates Section 31.12 of the Texas Penal Code; and (3) federal trademark counterfeiting and infringement in violation of 15 U.S.C. § 1114.

7. The issuance of a permanent injunction is a proper remedy for violations of both the Communications Act and the Lanham Act.  See, e.g., 47 U.S.C. § 605(e)(3)(B)(i) (the court may grant final injunctions to prevent violations of the Communications Act); Wescosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (permanent injunctive relief is the remedy of choice for trademark infringement cases).  As such, ABS-CBN is entitled to a permanent injunction enjoining Defendant from, among other things, (1) promoting and selling Pirate Equipment and Pirate Services; and (2) counterfeiting and/or infringing the ABS-CBN Marks.

8. 47 U.S.C. §605(e)(3)(C)(i)(II) provides that a plaintiff may elect to recover statutory damages in the sum of (1) not less than $1,000 nor more than $10,000, as the court considers just, for each violation of Section 605(a); and (2) not less than $10,000 nor more $100,000, as the court considers just, for each violation of Section 605(e)(4).  In addition, if the court finds that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," the court in its

discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of Section 605(a). See 47 U.S.C. §605(e)(3)(C)(ii).

9. 47 U.S.C. §605(e)(4) provides that "[a]ny person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by § 605(a), shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both." Section 605(e)(4) further provides that "[f]or purposes of all penalties and remedies established for violations of this paragraph, the prohibited activity established herein as it applies to each device shall be deemed a separate violation." See 47 U.S.C. §605(e)(4).

10. 15 U.S.C. § 1117(c) provides that a plaintiff may elect to recover an award of statutory damages at any time before final judgment is rendered in the amount of (1) not less than $1,000.00, nor more than $200,000.00 per counterfeit mark, per type of goods or services sold, offered for sale, or distributed, as the court deems just; or (2) if the Court finds that the use of the counterfeit mark was willful, not more than $2,000,000.00 per counterfeit mark, per type of goods or services sold, offered for sale, or distributed, as the court deems just. See 15 U.S.C. § 1117(c)(2).

11. This Court has broad discretion to set an amount of statutory damages under both the Communications Act and the Lanham Act. See, e.g., Cable/Home

10

Communication Corp. v. Network Productions, Inc., 902 F.2d 829, 852-53 (11th Cir. 1990) (district courts have great discretion in awarding statutory damages within the statutory limits of the Communications Act); Dial One of the Mid-South, Inc. v. BellSouth Telecomms., Inc., 269 F.3d 523, 527 (5th Cir. 2001) ("[Section] 1117 of the Lanham Act gives the district court broad discretion over the amount of damages.").

12. Statutory damages under both the Communications Act and the Lanham Act are intended to compensate for losses, and to punish and deter wrongful conduct. See, e.g., J & J Sports Productions, Inc. v. J.R. 'Z Neighborhood Sports Bar & Grille, 2010 WL 1838432, at *2 (D.S.C. April 5, 2010); Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1222 (S.D. Fla. 2004).

13. If any of these conclusions of law are found to be findings of fact, they shall be considered to have been included in the findings of fact above.

Based upon the findings of fact and conclusions of law set forth above, the Court concludes that Plaintiff's Motion should be granted, and it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. Defendant and his agents, servants, employees, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Final Default Judgment and Permanent Injunction ("Judgment") by personal service or otherwise, are hereby permanently restrained and enjoined from engaging in any of the following acts or omissions:

  (1) manufacturing, assembling, modifying, importing, exporting, possessing, advertising, promoting, distributing, selling, or offering to sell any equipment or device that is primarily of assistance in the unauthorized

    decryption of, or is intended for any other activity prohibited by 47 U.S.C. § 605(a) with respect to, ABS-CBN's entertainment content or programming;

(2)  manufacturing, intercepting, receiving, divulging, publishing, or displaying ABS-CBN's entertainment content or programming without prior written consent of ABS-CBN, or assisting any other person in doing so;

(3)  infringing, counterfeiting, or diluting the ABS-CBN Marks;

(4)  using the ABS-CBN Marks, or any mark or trade dress similar thereto, in connection with the sale of Pirate Equipment, Pirate Services, or any other unauthorized goods or services;

(5)  using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the Pirate Services, Pirate Equipment, or any other devices, equipment, goods, or services of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with ABS-CBN;

(6)  falsely representing themselves as being connected with ABS-CBN, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade or purchasing public to believe any devices, equipment, goods, or services of Defendant, are in any way endorsed by, approved by, or associated with ABS-CBN;

(7)  using any reproduction, counterfeit, infringement, copy, or colorable imitation of the ABS-CBN Marks in connection with the publicity, promotion, sale, or advertising of any devices, equipment, goods, or services sold by Defendant;

(8)  affixing, applying, annexing or using in connection with the sale of any devices, equipment, goods, or services, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's devices, equipment, goods, or services as being those of ABS-CBN, or as being endorsed in any way by ABS-CBN, and from offering such devices, equipment, goods, or services in commerce; or

(9)  otherwise unfairly competing with ABS-CBN or interfering with ABS-CBN's proprietary rights.

2. ABS-CBN shall recover from Defendant (1) statutory damages under 47 U.S.C. §605(e)(3)(C)(i)(II) in the sum of $100,000.00; and (2) statutory damages in the sum of $2,000,000.00 under 15 U.S.C. § 1117(c).

3. Interest shall accrue on the monetary amounts awarded in this Judgment at the prevailing rate calculated in accordance with 28 U.S.C. § 1961, from the date of entry of this Judgment until this Judgment is paid.

4. Since Defendant knowingly, intentionally, willfully, and maliciously engaged in both the illegal distribution of devices that were modified or designed to circumvent ABS-CBN's encryption technology to enable his customers to unlawfully intercept and access ABS-CBN's copyrighted programming without ABS-CBN's authorization, and the illegal trademark counterfeiting and infringement of the ABS-CBN Registered Marks, the monetary amounts awarded in this Judgment constitute non-dischargeable debts under 11 U.S.C. § 523(a)(6).

5. ABS-CBN may serve Defendant with this Judgment or any motion to enforce it by sending a copy of the Judgment or motion by United States mail to Defendant's last known address: 16301 Wimberly Lane, Rosharon, Texas 77583.

6. Within thirty (30) days of service of this Judgment, Defendant shall file with the Court and serve ABS-CBN with a sworn statement setting forth in detail the manner and form in which he has complied with this Judgment, including its injunctive provisions.

7. To the extent that Defendant has any of the following items in his possession, custody or under his control, he shall deliver such items to ABS-CBN (c/o

Stephen M. Gaffigan, P.A., Attn: Mr. Stephen M. Gaffigan, 401 E Las Olas Blvd, Ste 130-453, Ft. Lauderdale, FL 33301) within thirty (30) days of service of this Judgment for destruction: (1) any equipment or device that has been designed or modified to circumvent ABS-CBN's encryption technology to enable persons to intercept or access ABS-CBN's copyrighted programming without ABS-CBN's authorization or consent; and (2) all unauthorized materials bearing any of the ABS-CBN Marks in association with unauthorized goods or services.

8. The Court reserves and retains jurisdiction of the subject matter of this cause and of the parties hereto for the purpose of enforcing the terms of this Judgment.

**It is so ORDERED.**

Signed this _____ day of _____, 2020, at _____ __.m.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE