United States District Court
Southern District of Texas
**ENTERED**
March 05, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ABS–CBN CORPORATION, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-397 |
| | § | |
| ANTHONY BROWN; aka TONY | § | |
| BROWN; aka ANN ONG; dba 1700 | § | |
| CUTS TECHNOLOGY; aka LIFE | § | |
| FOR GREATNESS, | § | |
| | § | |
| *Defendant*. | § | |

## DEFAULT JUDGMENT

On January 8, 2021, the court permanently enjoined defendant Anthony Brown from (1) intercepting and selling plaintiff ABS–CBN's media content and (2) infringing on ABS–CBN's trademarks. *See* Dkt. 26. In that order, the court invited ABS to supplement its briefing to clarify the connection between its requested amount of damages under the Lanham Act and the defendant's conduct. *See id.* at 2.

ABS accepted the invitation and ably marshaled the evidence in support of its requested damages. *See* Dkt. 27. Accordingly, the court awards those damages in this default judgment.

### I.   Background

ABS is a media and entertainment company that broadcasts a variety

of television programs through cable and internet-subscription services. Dkt. 1 at ¶ 20. ABS transmits this programming via satellite signals. *Id.* at ¶ 21. To ensure that only paying customers can access its programming, ABS encrypts the satellite signals. *Id.* at ¶ 22. Customers who pay for ABS's content are able to descramble these signals with their satellite boxes, thereby gaining access to ABS's content. *Id.*

After hiring a private investigator, ABS discovered that the defendant had been publishing the contents of ABS's protected communications without its consent. *Id.* at ¶ 24. ABS specifically alleges that the defendant has been "engaged in a widespread 'piracy' scheme in which he [was] illegally promoting and selling 'Smart' TV boxes that have been designed or modified to circumvent [ABS's] encryption technology to enable his customers to unlawfully intercept and access [ABS's] copyrighted programming without compensating [ABS]." Dkt. 19 at 11 (citing Dkt. 1 at ¶¶ 1–2). To confirm its suspicion, ABS's investigator personally ordered and received two of the defendant's "Smart" TV boxes, and ABS's engineer later verified that the boxes had "been designed or modified to illegally receive [ABS's] communication services." Dkt. 20-3 at 4.

ABS also alleges that, to promote this illegal piracy business, the defendant has been using counterfeit versions of ABS's federally registered

trademarks "TFC" and "ABS–CBN." *Id.* In particular, the defendant has been unlawfully using these marks to promote his services on various Facebook pages. *See* Dkt. 1-2. These services included (1) pirated cable services and (2) pirated streaming services. Dkt. 27 at 5.

With respect to the cable services, for example, the defendant advertised with the TFC mark that "this is the best IPTV tv box for Filipinos you can cut your cable bill this is best internet cable and cheaper monthly only $12.00 only . . . ." Dkt. 1-2 at 4. In another Facebook post, the defendant stated that he had "3 customers install today for a TV box we are blessed them for the company save money for cable . . . enjoy watching live tv and new movies and old movies Filipino channels . . . ." Dkt. 20-3 at 7. And with respect to the streaming services, for example, the defendant posted, "On sale now . . . Smart TV Box is a streaming," Dkt. 1-2 at 2, and that he was once "watching free streaming service for $20.00 us dollar with over 60 Filipino channels . . . ." *Id.* at 3.

As for the breadth of the defendant's business, the defendant unwittingly informed ABS's private investigator that his business was "worldwide," that he could "ship anywhere," that he works with "a distributor in Kuwait," and that he would give ABS's private investigator "a cut in the market in California." Dkt. 20-3 at 3–4. ABS adds that the defendant's

actions—by virtue of his default and as shown by his various social-media posts and sales interactions with ABS's investigator—evince a willful intention as defined by both the Lanham Act and Communications Act. *See* Dkt. 19 at 16 (citing *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985) and *Arista Records, Inc. v. Beker Enterprises, Inc.*, 289 F. Supp. 1310, 1313 (S.D. Fla. 2003) (stating that a court may infer willfulness when a defendant defaults)).

## II.   Analysis

### A. Damages under the Communications Act

In addition to providing for injunctive relief, the Communications Act provides for recovery of money damages. Plaintiffs suing for Communications Act violations can elect to recover either (1) the actual damages they have suffered or (2) an award of statutory damages. *See* 47 U.S.C. §§ 605(e)(3)(C)(I)–(II). ABS has opted for statutory damages because, without the benefit of discovery, it cannot determine the extent of its actual harm. *See* Dkt. 19 at 25.

In this case, ABS alleges that the defendant violated 47 U.S.C. § 605(e)(4), which prohibits "the unauthorized decryption of satellite cable programming" through the manufacture and sale of electronic equipment. "[F]or each violation of [§ 605(e)(4)] . . . an aggrieved party may recover

statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

In its default-judgment motion, ABS submitted evidence of the defendant selling at least ten Smart TV boxes. Screenshots of the defendant's Facebook profiles for his business show that he has boasted about selling the TV boxes to eight different customers, Dkt. 20-3 at 7, and ABS's investigator ordered and received the TV boxes from the defendant twice. *Id.* at 4–5.

In light of the evidence ABS has submitted, as well as the defendant's default (which has possibly prevented ABS from discovering more violations), the court finds that applying the minimum penalty of $10,000 for each of the defendant's ten violations—for a total of $100,000—is just and reasonable to achieve the statutory goals of compensating ABS, punishing the defendant, and deterring others from engaging in such misconduct in the future.

## B. Damages under the Lanham Act

Like the Communications Act, the Lanham Act permits plaintiffs to recover statutory damages. 15 U.S.C. § 1117(c). ABS has elected that option for its trademark-infringement claims not only because of the lack of discovery but also "because evidence of a defendant's profits in [these kinds of cases] is frequently almost impossible to ascertain." *ABS-CBN Corp. v.*

*abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at \*6 (S.D. Fla. Dec. 27, 2017).

In trademark-infringement cases, the Lanham Act provides for an award of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just . . . ." 15 U.S.C. § 1117(c)(1). And for cases in which the infringement is willful, which ABS alleges here, "not more than $2,000,000 per counterfeit mark per type of goods or services sold . . . as the court considers just." *Id*. at § 1117(c)(2).

District courts have "broad discretion over the amount of damages" for trademark infringement. *Dial One of the Mid-South, Inc. v. BellSouth Telecommunications, Inc.*, 269 F.3d 523, 527 (5th Cir. 2001). To guide this discretion, courts looks to factors such as "whether a defendant's conduct was willful, lost revenue and harm to the plaintiff, the value of the plaintiff's trademarks, the defendant's cooperation in providing information on the value of the infringing material, and the deterrent effect on the defendant and others." *Cartier Int'l B.V. v. Ben-Menachem*, No. 06 CIV. 3917, 2008 WL 64005, at \*14 (S.D.N.Y. Jan 3, 2008).

Here, ABS requests $1,500,000 in statutory damages for its trademark-infringement claims, consisting of $500,000 for the defendant's

use of the counterfeit "ABS–CBN" mark in connection with cable services, plus $100,000 for the defendant's use of the counterfeit "TFC" marks in connection with both cable and streaming services. Dkt. 27 at 9.

Considering some of the factors outlined above, the court finds that, by virtue of the defendant's default, he has not been cooperative in providing information on the value of the infringing material, and that his conduct evinces a willful intention to use counterfeits of ABS's marks. Moreover, as ABS submits, the defendant's conduct has likely harmed ABS's goodwill and worldwide reputation, as well as steered revenue away from ABS. *See* Dkt. 19 at 28. Based on these considerations, the court thus agrees with ABS that, given the defendant's willful counterfeiting of the two marks in two distinct services, a $500,000 award for each of the three violations—for a total of $1,500,000—is just and reasonable under the facts presented in this case to fairly achieve the statutory goals of compensating ABS, punishing the defendant, and deterring the defendant and others from engaging in such misconduct in the future.

\* \* \*

In sum, ABS shall recover from the defendant $1,600,000 in statutory damages, consisting of $100,000 in damages under the Communications Act (47 U.S.C. § 605(e)(3)(C)(i)(II)) and $1,500,000 in damages under the

Lanham Act (15 U.S.C. § 1117(c)). Interest shall accrue on the monetary amounts in this judgment at the prevailing rate calculated in accordance with 28 U.S.C. § 1961, from the date of entry of this judgment until it is paid.

Because the defendant willfully engaged in both the illegal distribution of devices designed to circumvent ABS's encryption technology and the illegal counterfeiting of ABS's marks, the monetary amounts awarded under this judgment constitute non-dischargeable debts under 11 U.S.C. § 523(a)(6).

ABS may serve the defendant with this judgment, or any motion to enforce it, by sending a copy of the judgment or motion by U.S. Mail to the defendant's last known address: 16301 Wimberly Lane, Rosharon, Texas 77583.

Within thirty days of being served this judgment, the defendant shall file with the court, and serve upon ABS, a sworn statement setting forth in detail the manner and form in which he has complied with this judgment, including the injunctive provisions set forth in the court's order of January 8, 2021. Dkt. 26.

The court retains jurisdiction of the subject matter of this cause and of the parties hereto for the purpose of enforcing the terms of this judgment.

Signed on Galveston Island on the 5th day of March, 2021.

_____

JEFFREY VINCENT BROWN

UNITED STATES DISTRICT JUDGE