**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **ABS-CBN CORPORATION, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **CASE NO.  3:19-cv-00397** |
| | § | |
| **ANTHONY BROWN,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO VACATE OR SET
ASIDE DEFAULT JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiffs ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International (collectively, "ABS-CBN" or "Plaintiffs") file this Response to Defendant's Motion to Vacate or Set Aside Default Judgment and Memorandum of Law in Support.

**TABLE OF CONTENTS**

I.   NATURE AND STAGE OF PROCEEDING ……………………………………………1

II.   ISSUES TO BE RULED UPON……………………………………………………..4

III.  STANDARD OF REVIEW...……………………………………………………...5

IV.  RELEVANT BACKGROUND FACTS …………………………………………....5

  1. The Wimberly Lane Location is the Defendant's Usual Place of Business, Usual Place of Abode, and/or a Place Where He Can Probably Be Found...............5

  2. Unsuccessful Attempts to Serve Defendant at the Wimberly Lane Location...........9

  3. Defendant was Duly Served with Process.................................................................10

i

4.  Defendant's Factual Allegations..............................................................10

V.  ARGUMENT.......……………………………………………………………….11

A. Defendant was Properly Served with Process.........................................11

B. Defendant has Failed to Establish Good Cause......................................19

(1) Defendant Fails to Present a Meritorious Defense.............................21

(2) Defendant's Default was Willful........................................................23

(3) Setting Aside the Default Judgment
would Prejudice the Plaintiffs.............................................................27

(4) Defendant Did Not Act Expeditiously to Correct the Default.............28

(5) Conclusion........................................................................................29

C. Any Setting Aside of the Default Judgment Should be Conditioned upon
Payment of ABS-CBN's Reasonable Attorney's Fees and Costs..........................29

VI.  PRAYER FOR RELIEF..................................................................................30

## I.  Nature and Stage of this Proceeding

On December 5, 2019, ABS-CBN filed this action against the defendant, Anthony Brown [a/k/a Tony Brown and Ann Ong, and d/b/a 1700 Cuts Technology and Life for Greatness] ("Defendant"), for the unauthorized use or publication of communications services in violation of Section 705 of the Federal Communications Act of 1934, as amended, ("Communications Act") (47 U.S.C. § 605), and for trademark counterfeiting and infringement in violation of the Lanham Act (15 U.S.C. § 1114).  See Plaintiffs' Original Complaint [Dkt. 1].  In short, the Defendant is using counterfeits of ABS-CBN's registered trademarks in connection with his illegal promotion and sale of "Smart" TV boxes and other devices that have been designed or modified to circumvent ABS-CBN's encryption technology to enable his customers to unlawfully intercept and access ABS-CBN's copyrighted programming without compensating ABS-CBN (these illegal devices and the unauthorized use or publication of ABS-CBN's programming are hereinafter referred to as "Pirate Boxes" and "Pirate Services," respectively).

On December 6, 2019, the Clerk of this Court issued a Summons directed to the Defendant [Dkt.4], and between December 9, 2019 and December 13, 2019, ABS-CBN's process server tried unsuccessfully on four (4) occasions to serve the Defendant with process at 16301 Wimberly Lane, Rosharon, Texas 77583 ("Wimberly Lane Location" or "Location").   Significantly, as set forth in detail in Section IV(1)-(2) below, the Wimberly Lane Location is the address listed in the PayPal invoices for the Defendant's company, 1700 Cuts Technology, through which payments were made by ABS-CBN's investigator, Kevin Reyes ("Reyes" or "Investigator Reyes"), for his purchases from the

1

Defendant of the Pirate Boxes in question; it is listed as the return address on the packages that the Defendant sent Reyes containing these purchases; it was listed as the Defendant's most recent address in public records; and it is the address where ABS-CBN's process server testified that the Defendant lied to him about his true identity in order to evade service.  In fact*, it is even listed as the Defendant's address on the resume he submits in support of his Motion to Vacate or Set Aside the Default Judgment* ("Motion to Vacate"), and *where he acknowledges that his mother and stepfather reside*.

On December 20, 2019, ABS-CBN moved for substitute service pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure ("Federal Rules") and Rule 106(b) of the Texas Rules of Civil Procedure ("Texas Rules") [see Dkt. 6]. On January 2, 2020, the Court granted ABS-CBN's motion and entered an order ("Substitute Service Order") authorizing ABS-CBN to effect service on the Defendant by, among other things, "leav[ing] a copy of the service package[1] with a person over the age of 16 at [Defendant's] residence located at 16301 Wimberly Lane, Rosharon, Texas 77583 ...." See Dkt. 8.

On January 9, 2020, the Defendant was duly served with process in accordance with the Substitute Service Order when ABS-CBN's process server left a copy of the Service Package at the Wimberly Lane Location with James Mumford – the Defendant's

---

[1]     Pursuant to the Order, the service package was to contain "(i) the summons; (ii) original complaint and exhibits; (iii) civil cover sheet; (iv) order for conference and disclosure of interested parties; (v) plaintiffs' corporate disclosure statement; (vi) Judge Andrew Edison's Court Procedures; and (vii)  [the] order granting substitute service [collectively, the "Service Package"]."  See Dkt. 8.

adult stepfather, who owns and resides at the Location.  See Plaintiffs' Proof of Service on Defendant Anthony Brown [Dkt. 9]; Defendant's Motion to Vacate or Set Aside Default Judgment ("Motion to Vacate") [Dkt. 31, p. 5] (confirming that James Mumsford is the Defendant's stepfather).   Accordingly, the Defendant's answer was due on or before January 30, 2020.

On February 25, 2020, a default was entered against the Defendant for failing to answer or otherwise appear in this case.  See Clerk's Entry of Default [Dkt. 13].

On August 12, 2020, ABS-CBN filed its Motion for Entry of a Final Default Judgment and Permanent Injunction Against Defendant, and Memorandum of Law in Support ("Motion for Default Judgment") [Dkt. 19], and Appendix in Support of [the Motion for Default Judgment] ("App. to MDJ") [Dkt. 20].   In its Motion, ABS-CBN requested permanent injunctive relief, and statutory damages under both the Communications Act (47 U.S.C. § 605(e)(3)(C)(i)(II)) and the Lanham Act (15 U.S.C. § 1117(c)).

On January 6, 2021, the Court held a hearing on the Plaintiffs' Motion for Default Judgment by telephone. The Defendant called in and participated in the hearing. Thereafter, on January 8, 2021, the Court entered a Permanent Injunction ("Injunction") [Dkt. 26] in which the Court, among other things, found that ABS-CBN's allegations against the Defendant were deemed admitted by his default, and enjoined the Defendant from engaging in certain acts or omissions.

On March 5, 2021, the Court entered a Default Judgment [Dkt. 29] awarding ABS-CBN, among other things, total statutory damages in the sum of $1,600,000.00,

consisting of $100,000.00 in damages under the Communications Act and $1,500,000.00 in damages under the Lanham Act.

On April 2, 2021, the Defendant filed a Motion to Vacate or Set Aside the Default Judgment [Dkt. 31].  In his Motion to Vacate, the Defendant claims that the Default Judgment should be vacated or set aside (1) pursuant to Rule 60(b)(4) because ABS-CBN failed to properly serve him while he was overseas making the Judgment void; or (2) if service was proper, pursuant to Rule 60(b)(1) because the default was the result of mistake, inadvertence, surprise, or excusable neglect by Defendant.  Id. at p. 3.

As set forth in detail below, Defendant's Motion to Vacate fails because (1) the Defendant was duly served with process in accordance with the Court's Substitute Service Order issued pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure and Rule 106(b) of the Texas Rules of Civil Procedure; and (2) the Defendant has failed to show that good cause exists to set aside the Default Judgment, since (i) he neither has nor presents a meritorious defense to ABS-CBN's claims, (ii) his default was willful, (3) ABS-CBN will be unfairly and significantly prejudiced if the Default Judgment is set aside; and (4) the Defendant did not act expeditiously to correct the default.

## II.  Issues to be Ruled Upon

1.      Did ABS-CBN properly serve the Defendant with process in this case?

2.      Did the Defendant meet its burden of showing that good cause exists to vacate or set aside the Default Judgment?

### III.  **Standard of Review**

Under Rules 55(c) and 60(b), a district court may set aside an entry of default or default judgment for good cause.  Lacy v. Sitel Corp., 227 F.3d 290, 291-92 (5th Cir. 2000). The denial of such relief is reviewed only for abuse of discretion. Id. at 292.  Any factual determinations underlying that decision are reviewed for clear error.  Id.

### IV.  **Relevant Background Facts**

**1.  The Wimberly Lane Location is the Defendant's Usual Place of Business, Usual Place of Abode, and/or a Place Where He Can Probably Be Found**

As indicated in Section I above, the evidence establishes that the Wimberly Lane Location is the Defendant's usual place of his illicit business, his usual place of abode, and/or a place where he can probably be found.

First, with respect to the Wimberly Lane Location being the place of the Defendant's illicit business, this Location is the address listed in the PayPal invoices for the Defendant's company, 1700 Cuts Technology, through which payments were made by one of ABS-CBN's Investigators Reyes for his purchases from the Defendant on October 15, 2019 and October 22, 2019, respectively.  See Appendix in Support of Plaintiffs' Motion for Substitute Service ("App. to MSS), Ex. B – Reyes Decl. ¶¶ 4-6 [Dkt. 7-2].  The Wimberly Lane Location is also listed on the packages that were sent to Reyes by the Defendant, as the return address from which the packages were sent.  Id. at ¶¶ 5-6.

Specifically, on October 15, 2019, Reyes began communicating with "Ann Ong" on Facebook Messenger to purchase a Pirate Box.  Id. at ¶ 4.  "Ann Ong" later identified

himself to be "Anthony Brown," and confirmed that payment should be sent to "Anthony Brown." Id. Defendant further told Reyes that his company's name was 1700 Cuts Technology, and he provided Reyes with a PayPal invoice for the Pirate Box from 1700 Cuts Technology, which listed its address as "16301 Wimberly Lane, Rosharon, Texas 77583, and its email address as "lifeforgreatness@gmail.com." Id. (emphasis added).

Later that day, Reyes paid $150 to 1700 Cuts Technology via PayPal for the Pirate Box, and on October 17, 2019, Reyes received a package containing the Pirate Box, which stated that it was from "Anthony Brown, 1700 Cuts Technology, 16301 Wimberly Lane, Rosharon, Texas 77583." Id. at ¶ 5 (emphasis added).

On October 21, 2019, Reyes received a message from the Facebook profile "Ann Ong" – who again, had previously identified himself as Anthony Brown – via Facebook Messenger regarding a second purchase. Id. at ¶ 6. On October 22, 2019, Reyes received a text message via WhatsApp from Anthony Brown (713-373-2235) concerning this purchase, and Defendant confirmed that Reyes could make payment once again through the 1700 Cuts Technology PayPal profile referenced above. Id. Later that day Reyes paid $125 to 1700 Cuts Technology via PayPal. Id. On October 28, 2019, Reyes received a package, which stated that it was from "Tony Brown, 16301 Wimberly Lane, Rosharon, Texas 77583." Id. at ¶ 6 (emphasis added).

Second, with respect to the Wimberly Lane Location being the Defendant's usual place of abode or a place where the Defendant can probably be found, this Location is again is *listed as the Defendant's address on the resume he submitted in support of his Motion to Vacate* (see App. to Motion to Vacate, Brown Decl., Ex. A [Dkt. 32-2], and at

6

least at the time this suit was filed, it was listed as the Defendant's most recent address in public records.  <u>See</u> App. to MSS, Ex. C – Voyles Decl. ¶ 4 [Dkt. 7-3].  The Wimberly Lane Location is owned by the Defendant's stepfather, James Mumford, and is where the Defendant's mother, Renell B. Mumford, and stepfather reside.  <u>See</u> Motion to Vacate [Dkt. 31, p.5].  This Location is also where ABS-CBN's process server, Eric Johnson, testified to have actually <u>found</u> the Defendant during one of his unsuccessful attempts to serve him with process, but the Defendant <u>lied to him about his true identity</u>.  <u>See</u> App. to MSS, Ex. A – Johnson Decl. ¶¶ 5-6 [Dkt. 7-1].

Specifically, on December 11, 2019, Johnson visited the Wimberly Lane Location a second time to try to serve the Defendant.  Id. at ¶ 5.   As the Location is surrounded by a fence bearing multiple "no trespass" signs with a locked gate at the entrance to the driveway leading up to the trailer home on the property, Johnson could not gain entry. <u>Id</u>.  However, while he was walking outside the fence, a man came out of the trailer home and asked Johnson what he was doing.  <u>Id</u>.  Johnson gave the man his business card, and told him that he was looking for the resident, Anthony Brown, since a <u>federal lawsuit had been filed against Mr. Brown</u> so it was important that Johnson find him, and deliver the relevant papers to him, so that he could respond accordingly.  <u>Id</u>.  The man identified himself as "Kevin Williams," and told Johnson that this was the "Mumford residence," but that he personally knows Anthony Brown and believes that he now lives in the Humble area.  <u>Id</u>.

Based on his conversation with "Kevin Williams" (and the fact that Johnson was able to determine from the Brazoria County Appraisal District records that the Wimberly

Lane Location was owned by James R. Mumford, and from the Texas Vehicle Registration records that the vehicle he saw at the Location was registered to Renell B. Mumford and James R. Mumford), Johnson left the Wimberly Lane Location believing that it was a bad address for the Defendant.  Id. at ¶ 6.  However, later in the day, Johnson was sent a photograph of the Defendant from which he positively identified the man he had spoken with – "Kevin Williams" – to in fact be the Defendant.  Id.

On a third unsuccessful attempt to serve the Defendant at the Wimberly Lane Location the following day, Johnson spoke to a woman at the gate to the property who identified herself as "Mrs. Mumford," and who said that she lives at the Wimberly Lane Location.  Id. at ¶¶ 7-8.   Johnson identified himself and explained why he was there. Id.at ¶ 7.  The woman confirmed that the man Johnson had spoken with the day before was in fact the Defendant, but she said he wasn't available.  Id. at ¶¶ 7-8.  This woman is apparently the Defendant's mother.  See Motion to Vacate [Dkt. 31, p. 5].

Johnson gave the woman his business card, and asked if she could call the Defendant to arrange another meeting. Id. at ¶ 8.  The woman claimed that she didn't have the Defendant's telephone number.  Id.  Johnson responded that it was strange that she wouldn't have a telephone number for someone who stays with her.  Id.  The woman said that she trusts the Defendant, and claimed that he only comes by from time to time. Id.  Johnson replied by pointing out that the Defendant was alone at the Wimberly Lane Location the day before, and that he obviously has access to the Location.  To this, the woman had no response.  Id.  Johnson left his card with the woman, and encouraged her

to contact the Defendant and ask him to call Johnson.  The Defendant, however, never contacted Johnson.  Id.

**2.  Unsuccessful Attempts to Serve Defendant at the Wimberly Lane Location**

At approximately 6:32 p.m. on December 9, 2019, Johnson visited the Wimberly Lane Location to try to serve the Defendant personally with process.   Id. at ¶ 4. However, as indicated above, the Location is surrounded by a fence bearing multiple "no trespass" signs with a locked gate at the entrance of the driveway leading up to the trailer home on the property.  Id.  Consequently, Johnson could not gain access to the trailer home, and his attempt to serve the Defendant was unsuccessful.  Id.  However, Johnson posted a notice of his attempted delivery on the Locked Gate, to which the Defendant, to Johnson's knowledge, has never responded.  Id.

At approximately 11:26 a.m. on December 11, 2019, Johnson made a second attempt to serve the Defendant personally with process at the Wimberly Lane Location. Id. at ¶ 5.  As discussed in Section VI(1) above, Johnson again could not gain access to the property because of the fence and Locked Gate; however, he claims he was approached at the fence by, and spoke with, the Defendant, who lied about his true identity.  Id. at ¶¶ 5-8.  Consequently, this attempt to serve the Defendant was likewise unsuccessful.  Id.

At approximately 6:00 p.m. on December 12, 2019, Johnson made a third attempt to serve the Defendant personally with process at the Wimberly Lane Location.  Id. at ¶ 7.  Again, Johnson could not gain access to the property because of the fence and Locked

Gate.  Id.  However, as discussed in Section IV(1) above, he spoke with a woman at the gate, who identified herself as "Mrs. Mumford," a resident at the Location, and who confirmed that the person who Johnson had spoken to the previous day was in fact the Defendant.  Id.  However, the woman said that the Defendant was not available, so this attempt to serve the Defendant was also unsuccessful.  Id.

At approximately 7:35 a.m. on December 13, 2019, Johnson made a fourth attempt to serve the Defendant personally with process at the Wimberly Lane Location.  Id. at 9.  However, once again Johnson could not gain access to the property because of the fence and Locked Gate.  Id.  Although there was a vehicle at the Location, Johnson could not get anyone's attention to come to the Locked Gate.  Consequently, this attempt to serve the Defendant was unsuccessful as well.  Id.

### 3.  Defendant was Duly Served with Process

On January 9, 2020, the Defendant was duly served with process in accordance with the Substitute Service Order when ABS-CBN's process server left a copy of the Service Package at the Wimberly Lane Location with the Defendant's stepfather, James Mumford [see Dkt. 9].

### 4.  Defendant's Factual Allegations

The Defendant denies that "he ever spoke to Plaintiffs' process server at [the Wimberly Lane Location] on December 11, 2019, or at any other time," and that the Location was not his "dwelling, usual abode, or place of residence at any time relevant to this action."  See Motion to Vacate [Dkt. 31, p.5].  He also claims that (1) he travelled to

Qatar to begin a work deployment on or about December 15, 2019, and that he was there "almost exclusively" until November 28, 2020 [id. at p. 4]; (2) prior to his departure for Qatar, he was staying in San Antonio, and would occasionally return to Pearland [id.]; (3) the only time he returned to the United States during his deployment was for approximately three weeks when he travelled to San Antonio to complete training [id. at 4-5]; and (4) he travelled to North Carolina on or about December 28, 2020 to care for his grandmother.

## V.  Argument

### A.  Defendant was Properly Served with Process

Again, the Defendant was duly served with process in accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure and Rule 106(b) of the Texas Rules of Civil Procedure.  Federal Rule 4(e)(1) provides for service on an individual within a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  See Fed. R. Civ. P. 4(e).  Texas Rule 106 governs service in Texas.  Texas Rule 106(a)(1) states that service can be effected by "delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto."  See Tex. R. Civ. P. §106(a)(1).

When attempts to serve a defendant under Texas Rule 106(a)(1) have been unsuccessful, Texas Rule 106(b) provides in pertinent part that:

> Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing

11

that service has been attempted . . . at the location named in such affidavit but has not been successful, the court may authorize service

(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone over sixteen years of age at the location specified in such affidavit, or

(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P 106(b) (emphasis added).

As set forth in Section IV(1)-(2) above, ABS-CBN attempted unsuccessfully on four (4) occasions to serve the Defendant in person at the Wimberly Lane Location in accordance with Texas Rule 106(a)(1) and Federal Rule 4(e)(2). Again, the Wimberly Lane Location is (1) the address listed in the PayPal invoices for the Defendant's company, 1700 Cuts Technology, through which payments were made by ABS-CBN's Investigator Reyes for his purchases from the Defendant of the Pirate Boxes in question; (2) the return address listed on the packages that the Defendant sent Reyes containing these purchases; (3) listed as the Defendant's address on the resume he submitted in support of his Motion to Vacate, and that was listed as the Defendant's most recent address in public records; (4) owned by the Defendant's stepfather, and is where the Defendant's mother and stepfather reside; (5) where ABS-CBN's process server, Eric Johnson, claims that on December 11, 2019, he was approached by the Defendant, who lied about his true identity, and that he told the Defendant he was there to deliver legal papers to "Anthony Brown" who was being sued in federal court; and (6) where the Defendant's mother confirmed to Johnson the following day that it was in fact the

12

Defendant with whom he'd spoken.  These facts firmly establish that the Wimberly Lane Location was the Defendant's usual place of business, usual place of abode, *and* the place where he could probably be found.

As set forth in Section I above, ABS-CBN moved for substitute service pursuant to Federal Rule 4(e)(1) and Texas Rule 106(b) on December 20, 2019 [see Dkt. 6]; the Court entered its Substitute Service Order on January 2, 2020, authorizing ABS-CBN to effect service on the Defendant by, among other things, "leav[ing] a copy of the Service Package with a person over the age of 16 at [Defendant's] residence located at 16301 Wimberly Lane, Rosharon, Texas 77583 ...." [Dkt. 8]; and service was duly effected in accordance with the Court's Substitute Service Order on January 9, 2020, when Plaintiffs' process server left a copy of the Service Package at the Wimberly Lane Location with the Defendant's stepfather, James Mumford [Dkt. 9].

The Defendant now claims that he wasn't properly served because *unbeknownst*[1] to ABS-CBN, he purportedly left the United States on December 15, 2019 for a temporary work assignment in Qatar, and he was purportedly in Qatar on January 9, 2020, when the Service Package was delivered to the Defendant's stepfather at the Wimberly Lane Location.  As such, without any supporting authority,[2] the Defendant claims that he should have been served pursuant Federal Rule 4(f), which provides how

---

[1]    See Appendix to Plaintiff's Response to Motion to Vacate ("App. to this Response"), Ex. A – Abbott Decl. ¶ 3 [Dkt. 35-1].

[2]    Although the Defendant cites Nabulsi v. Nahyan, 2009 WL 1658017 (S.D. Tex. 2009), Nabulsi only addresses whether a citizen of the United Arab Emirates (U.A.E.) living in Abu Dhabi had been properly served under Rule 4(f). It neither mentions nor addresses whether service was in any way attempted or available under Rule 4(e).

service may be effected in a place outside of the United States.  See Motion to Vacate [Dkt. 31, pp. 8-11].[3]  Since he wasn't served under Rule 4(f), the Defendant claims the Default Judgment is void and should be set aside under Rule 60(b)(4).  Id.

The Defendant's claims are without merit.  Just because the Defendant may have *temporarily* left the United States *after* this action was filed and *after* ABS-CBN had attempted unsuccessfully on four (4) occasions to serve him pursuant to Texas Rule 106(a)(1) doesn't mean that he had to be served in Qatar during this period pursuant to Federal Rule 4(f).

Whether Rule 4(e) or Rule 4(f) applies in situations like this is perhaps best summed up in Schumaker v. Airbnb, Inc., 2016 WL 7826667 (N.D. Cal. Nov. 9, 2016). In that case, the defendant asserted that he was vacationing in France at the time of the attempted service, and from there took up residence in Canada.  Id. at *3.  He claimed that the plaintiff's service by delivering copies of the complaint and summons to the defendant's "usual place of business" in Irvine, California pursuant to Rule 4(e)(1) and

---

[3]     The Defendant also claims that the Wimberly Lane Location was not his "dwelling, usual abode, or place of residence at any time relevant to this action."  See Motion to Vacate [Dkt. 31, p.5] (notably, he doesn't provide any addresses of what he considered to be his dwelling, abode or residence before departing for Qatar).  While not dispositive in any way as to whether service was proper in this case, the Defendant's claim is contrary to both the facts and the law.  See, e.g., Thanco Products & Imports, Inc. v. Kontos, 2009 WL 540963, at *5 (S.D. Tex. 2009) (where defendant residing in Greece had identified his mother's residence on his voter registration application, "periodically visit[s his] parents in the United States," and didn't dispute receiving actual notice of the summons and complaint left with his mother, the court held that his mother's residence qualified as his "dwelling or usual place of abode" in the United States).

California Code of Civil Procedure Section 415.20(b) was ineffective because service under Rule 4(e) is not permitted when the person to be served is located outside the United States. Id. Instead, he argued that the plaintiff was "required to serve him in France or Canada pursuant to Rule 4(f), governing service in foreign countries." Id.

In rejecting the defendant's Rule 4(f) argument, and finding that service under Rule 4(e) was effective, the Court stated:

> [Defendant] cites no law for this proposition, and his interpretation is incorrect. Rule 4(e) provides: "Unless federal law provides otherwise, an individual ... may be served in a judicial district of the United States by" following state law or a number of other means. Fed. R. Civ. P. 4(e). According to the plain language of Rule 4(e), its availability depends on the location in which service is carried out, not on the location of the individual served. Furthermore, the Ninth Circuit has rejected the argument that an individual's location outside the United States mandates service under Rule 4(f) rather than Rule 4(e). See United States v. Wen-Bing Soong, 2016 WL 2909699, at *1-2 (9th Cir.) (upholding substitute service of summons under Rule 4(e)(1) and Cal. Code Civ. Proc. § 415.20(b) on defendants who had not been physically present in the United States for seven years and argued they had to be served under Rule 4(f).
>
> Rule 4(e) provided proper avenues for serving [the defendant] regardless of whether he was present in the United States at the time of attempted service.

Id. (emphasis added); see also Harvest Natural Resources, Inc. v. Ramariz Correno, 2020 WL 3063940 (S.D. Tex. 2020) (upholding service under Rule 4(e)(2)(B) on defendant who had left the United States "with no intent to return" three months before the suit was filed and service was attempted, and who argued that he had to be served under Rule 4(f)); Thanco Products, 2009 WL 540963 (S.D. Tex. 2009) (upholding service under Rule 4(e)(2)(B) by leaving copies of the complaint and summons with defendant's mother at his "dwelling or usual place of abode," despite defendant's argument that he

15

was a full-time resident of Greece and the dwelling in question was his mother's, not his); Piper, Inc. v. Pavlyukovskyy, 2020 LEXIS 219515 (N.D. Cal. Nov. 23, 2020) (upholding service under Rule 4(e) on defendant who was in New Zealand "with no intention to return to the United States in the foreseeable future" at the time suit was filed and service was attempted, and who argued that he had to be served under Rule 4(f)).

In Harvest Natural, Judge Rosenthal similarly rejected a defendant's Rule 4(f) argument.   In that case, the plaintiff filed suit against the defendant for alleged RICO violations on February 16, 2018.  Harvest Natural, 2020 WL 3063940, at *7.   The same day, the plaintiff served the defendant pursuant to Rule 4(e)(2)(B) by leaving copies of the complaint and summons with a house employee at the defendant's "last and only known residence" in New York City, where the defendant had lived while he was the Venezuela ambassador to the United States.  Id.   The defendant didn't respond to the complaint, and the court entered a final default judgment on February 28, 2019.  Id. at *2.

In June 2019, the defendant moved to set aside the default judgment, claiming, among other things, that he had not been properly served, and therefore, the judgment was void under Rule 60(b)(4).  Id.  In support, the defendant claimed that he had left the New York City residence with "no intent to return" when he resigned from his ambassadorship more than two (2) months before the attempted service, and that he had fled the United States in December 2017 to avoid persecution by the Venezuelan government. Id. at *7.  As such, the defendant argued that the plaintiff's attempted service under Rule 4(e) was improper for three (3) reasons: (1) the New York City residence was no longer his place of abode; (2) the plaintiff should have known it was no

16

longer his place of abode; and (3) the plaintiff should have served him pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents under Rule 4(f).  Id.

The plaintiff responded that its good faith efforts to properly serve the defendant were legally sufficient under the circumstances. Id. at *8. Specifically, the plaintiff argued that when it was preparing to sue the defendant in February 2018, it didn't know where in the world he might be hiding; its investigators found only the New York City address where the defendant lived during his ambassadorship; the staff at that residence had accepted and signed for the complaint and other mailings from February to April 2018 and December 2018 to January 2019; and the defendant had told the press that he'd been moving between countries since leaving the United States in December 2017.  Id.

The plaintiff also cited N.L.R.B. v. Clark, 468 F.2d 459, 462-64 (5th Cir. 1972), in which the court held under an earlier version of Rule 4 that "[a] defendant who beclouds his whereabouts should not be entitled to benefit from the process server's consequent confusion," and therefore, service was adequate at the defendant's *former* place of business because he "created the appearance that [it] *remained* his principal place of business."  Id. (emphasis added).  Like the defendant in Clark, the plaintiff claimed that the defendant had given the appearance that the New York City address was still his residence by, among other things, listing New York as his location on his Twitter profile until at least June 2018; listing New York as his residence in his Wikipedia profile beginning in December 2017; not giving the New York residence staff a forwarding address when he left in December 2017; allowing the New York residence to be

17

associated with phone records in his wife's name until two (2) months after service; and maintaining a New York phone number until at least March 2018.  Id.  The plaintiff further stressed that the defendant had received actual notice of the suit in February 2018, which the defendant did not dispute.  Id.

Finding that the plaintiff took reasonable steps to locate the defendant under the circumstances, and that the defendant had actual notice of the suit, the court held that service was adequate under Rule 4(e)(2)(B), and the plaintiff need not attempt service under Rule 4(f).  Id. at *9.

In the present case, the facts supporting the sufficiency of Rule 4(e) service on the Defendant are even more compelling than the facts on which sufficient Rule 4(e) service was found in Harvest Natural and the other cases cited above.  At all times relevant to this issue, the Defendant was a Texas resident who intended to return to Texas, and did return to Texas, both after and during his temporary work deployment. Likewise, as established by the facts set forth above, the Wimberly Lane Location was the Defendant's usual place of business and usual place of abode (or at least he certainly gave that appearance and any claim to the contrary should be disregarded under Clark), and the place where his mother and stepfather admittedly reside.  As such, service at the Wimberly Lane Location was not only reasonably calculated to give the Defendant notice of this suit, but it is where the Defendant actually did receive notice of this suit on December 11, 2019 according to Eric Johnson's testimony, as well as notice of other papers that were sent to the Location.  For instance, the Defendant obviously received Notice of [the] Setting on ABS-CBN's Motion for Default Judgment [Dkt. 24] (which –

18

together with the Motion [Dkt. 19], Appendix in Support [Dkt. 20], and attachments thereto [Dkts. 20-1 through 20-4] – was mailed to the Wimberly Lane Location on December 5, 2020 [see Certificate of Service, Dkt. 25], and received and signed for at the Location on December 7, 2020) [see App. to this Response, Ex. A – Abbott Decl. ¶ 4 [Dkt. 35-1], since he called in and participated in the hearing on January 6, 2021. ABS-CBN would further note that none of the packages or envelopes containing legal papers relating to this case that were sent by mail to the Defendant at the Wimberly Lane Location were ever not accepted, rejected, or returned as not deliverable. Id. at ¶ 5.

In fact, the Defendant's Motion to Vacate conveniently omits any mention of when he received notice of this suit or the default entered against him, or what steps, if any, he took in response, and he doesn't deny that he received notice of this suit (or of the default). To the contrary, the Defendant claims that he didn't file an answer because (1) he wasn't properly served, (2) he didn't *believe* that he needed to file an answer until he was served, and (3) he wasn't "adequately" notified of these proceedings, all of which indicate that he did receive notice of the suit, but he incorrectly decided that service was improper, and he chose to ignore it.

For these reasons, ABS-CBN respectfully submits that the Defendant was properly served on January 9, 2020, and that the Defendant's request that the Default Judgment be vacated or set aside pursuant to Rule 60(b)(4) be denied.

**B.** **Defendant has Failed to Establish Good Cause**

Alternatively, the Defendant claims that if he was properly served, the Court should set aside the Default Judgment for good cause pursuant to Rule 55(c) of the

Federal Rules of Civil Procedure.  <u>See</u> Fed. R. Civ. P. 55(c).  Rule 55(c) provides that "the Court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  <u>Id</u>.  In regard to the Defendant's contention, Rule 60(b)(1) provides that the court may relieve a party from a final default judgment if the default was the result of "mistake, inadvertence, surprise, or excusable neglect."  <u>See</u> Fed. R. Civ. P 60(b)(1); Defendant's Motion to Vacate [Dkt. 31, p. 3].  Although the Fifth Circuit favors "resolving cases on the merits," this policy is "counterbalanced by considerations of social goals, justice[,] and expediency, a weighing process [that ] lies largely within the domain of the trial judge's discretion.  <u>Rogers v. Hartford Life Accident Ins. Co.</u><u>167 F.3d 933, 936</u> (5th Cir. 1999); <u>see</u> <u>Dolphin Plumbing Co. of Florida v. Financial Corp. of North America</u>, 508 F.2d 1326, 1327 (5th Cir. 1970) ("Although we are mindful of the strong policy in favor of trial on the merits, *we are equally aware of the district court's duty to protect the integrity of the judicial process*.") (emphasis added)

In determining whether good cause exists to set aside a default judgment under Rule 60(b)(1), courts examine three nonexclusive factors: "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented."  <u>Jenkins & Gilchrist v. Groia & Co.</u>, 542 F.3d 114, 119 (5th Cir. 2008).  Courts may also consider whether the public interest was implicated, whether there was significant financial loss to the defendant, and whether the defendant acted expeditiously to correct the default.  <u>Id</u>.

The district court does not have to consider all of the above factors in ruling on a defendant's Rule 60(b)(1) motion: "the imperative is that they be regarded simply as a

means of identifying circumstances which warrant a finding of 'good cause.'"   Id. However, two of the factors referenced above carry special significance. Id.   First, a district court has the discretion to refuse to set aside a default judgment under Rule 60(b)(1) if the defendant "fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." Id. at 119-20.   Likewise, a district court does not have to make another finding if it finds that the defendant's default was willful. Id. at 120.

"The burden of showing good cause lies with the party challenging the default entry." Sindhi v. Raina, 905 F.3d 327, 331 (5th Cir. 2018).   Here, the Defendant fails to meet his burden for the reasons below.

## 1.  Defendant Fails to Present a Meritorious Defense

Based on the evidence set forth in detail in the Default Judgment, the Court found that the Defendant willfully violated both the Communications Act and the Lanham Act by using counterfeits of ABS-CBN's registered trademarks to illegally promote and sell "Smart" TV boxes that had been designed or modified to circumvent ABS-CBN's encryption technology to enable his customers to unlawfully intercept and access ABS-CBN's copyrighted programming without compensating ABS-CBN.   See Default Judgment [Dkt. 29].

To present a meritorious defense for purposes of Rule 60(b)(1), a defendant must provide "definite factual allegations, as opposed to mere legal conclusions, in support of [his] defense." See Jenkins & Gilchrist, 542 F.3d at 122.   The alleged "defense is measured not by whether there is a likelihood that it will carry the day, but *whether the*

21

*evidence submitted if proven at trial would constitute a complete defense*." Id. (emphasis added).  In other words, the definite factual allegations and supporting evidence provided by the defendant, if believed at trial, must lead to a result *contrary* to that achieved by the default.  Id. (citing 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure: Civil F.3d § 2697 (1988) ("The underlying concern is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.").

Here, the Defendant neither has nor presents a sufficient meritorious defense to ABS-CBN's claims.  Without any recitation of supporting facts or presenting any supporting evidence, the Defendant merely states that he has "several meritorious defenses to the claims asserted by Plaintiffs in this suit including but not limited to:

1. Plaintiffs have unclean hands by virtue of the fact that they enticed Defendant's alleged violations at issue.

2. Defendant asserts that any violations the Plaintiffs allege were committed in the Plaintiffs' Original Complaint constitute fair use.

3. Any of Defendant's acts or omissions were not committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive."

See Motion to Vacate [Dkt. P. 13].

Aside from being meritless, these unsupported, conclusory allegations are wholly insufficient to sustain the Defendant's burden under Rule 60(b)(1).  See, e.g., Moldwood Corp. v. Stutts, 410 F.2d 351, 352 (5th Cir. 1968) (a defendant must make a "clear and specific showing ... by [a] definite recitation of facts" that the defendant has a valid defense); Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir.1970) (a "bald allegation,

without supporting facts underlying the defense, will not sustain the burden of the defaulting party under Rule 60(b)").

For this reason alone, the Defendant's request to set aside the Default Judgment under Rule 60(b)(1) should be denied.

## 2. **Defendant's Default was Willful**

"A willful default is an 'intentional failure' to respond to litigation." In re OCA, 551 F.3d 359, 370 n. 32 (5th Cir. 2008). Here, the Defendant's acts and omissions both *before* he was duly served on January 9, 2020, and *afterwards*, show that his default was the result of his <u>intention</u> to avoid litigating this case. See <u>Jenkins & Gilchrist</u>, 542 F.3d at 123 ("In sum, perfection of service is not determinative – the defendant's knowledge of the perfected service, and the defendant's actions post-service also play a role in measuring the willfulness of a defendant's default.").

Again, as set forth in detail in Section IV(1)(2) above, ABS-CBN's process server, Eric Johnson, was approached by a man at the Wimberly Lane Location on December 11, 2019, who asked him what he was doing. When Johnson told him that he was looking for Anthony Brown because Brown had been sued in federal court and he was there to deliver legal papers, the man identified himself as "Kevin Williams," and told Johnson that he personally knows Brown and believes he lives in the Humble area. Upon receiving a photograph of the Defendant later that day, Johnson realized that the man who approached him was in fact the Defendant, which the Defendant's own <u>mother</u> confirmed to Johnson the next day. See, <u>e.g.</u>, <u>Espinoza v. Humphries</u>, 2020 WL

5350489, at *2 (N.D. Tex. 2020) (defendant's statement to the process server amounting to an admission that serving him would be difficult, suggests that his conduct and resulting default were willful).  Although the Defendant claims in his Motion to Vacate that he never "spoke to Plaintiffs' process server at [the Wimberly Lane Location] on December 11, 2019, or at any other time," he notably doesn't deny being at the Location that day or receiving notice that he was being sued, and he doesn't provide any evidence to corroborate his claim, such as testimony from his *mother* or "*Kevin Williams*."

Even assuming arguendo that the Defendant didn't speak to Johnson on December 11, 2019, the Defendant's acts and omissions *after* service was effected on January 9, 2020, further indicate that his failure to answer was intentional.  Though the Defendant's mother knew as of December 12, 2019 why Johnson was looking him, the Service Package was delivered to his stepfather on January 9, 2020, the default was entered on February 25, 2020, and the Defendant acknowledges that he spent approximately three (3) weeks in Texas in April 2020, the Defendant's Motion to Vacate again noticeably omits *when he first learned of the Service Package or the default,* and *what steps, if any, he took in response*.

Instead, the Defendant merely claims that he didn't file an answer in this suit because (1) he was in Qatar "almost exclusively" from on or about December 15, 2019 until on or about November 28, 2020, except for the three (3) weeks he spent in Texas in April 2020; (2) he went to North Carolina for an undisclosed period of time on or about December 28, 2020 to care for his grandmother; (3) of his inability to travel and the confusion caused by the COVID-19 pandemic; (4) the Plaintiffs failed to properly serve

24

him; (5) he believed the Plaintiffs would need to serve him before he was required to file an answer; and (6) the Plaintiffs failed to adequately notify him of the proceedings. See Motion to Vacate [Dkt. 31, p. 4]. These claims in no way justify or excuse the Defendant's failure to make an appearance in this case until the hearing on ABS-CBN's motion for default judgment on January 6, 2020, or his failure to try to set aside his default until April 2, 2020.

The fact that the Defendant may have temporarily been in Qatar and North Carolina for parts of 2020 during the COVID-19 pandemic is certainly no excuse for his inaction. Courts, lawyers, and litigants have all proceeded with their cases remotely during the pandemic. Like the rest of us, the Defendant presumably had access to cell phones, the internet, email, and worldwide postal services[4] during the period in question, all of which he is very adept at using as evidenced by his illegal piracy operation.[5] In fact, the Defendant told ABS-CBN's Investigator Reyes that he is "worldwide" and "can ship anywhere," and again, he acknowledges that he was able to return to Texas for approximately three (3) weeks in April 2020. See App. to MDJ, Ex. C – Reyes Decl. ¶ 7 [Dkt. 20-3]; Motion to Vacate [Dkt. 31, pp. 4-5].

---

[4]     In fact, even the Defendant's offer of deployment states that the Government will provide him with postal service. See App. to Motion to Vacate, Brown Decl., Ex. F [Dkt. 32-7, p.1].

[5]     For instance, the Defendant communicated with his customers and prospective customers through social media and WhatsApp; he illegally promoted and sold his Pirate Boxes and Pirate Services through his social media platforms; and he shipped his Pirate Boxes by priority mail. See Section IV(1) above.

The Defendant's claims that he wasn't properly served, that he didn't *believe* that he needed to file an answer until he was served, and that he wasn't "adequately" notified of these proceedings, are also insufficient to establish good cause. In fact, they show that he <u>knew</u> he'd been sued.  As discussed in Section V(A) above, the Defendant <u>was</u> properly served with process, and the Court's Substitute Service Order together with the Summons – which were both included in the Service Package – made it perfectly clear that the Defendant could be served by leaving a copy of the Service Package with a person over the age of sixteen at the Wimberly Lane Location, and that he had twenty-one (21) days thereafter to file either an answer to ABS-CBN's Complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  <u>See</u> Substitute Service Order [Dkt. 8]; Summons [Dkt.4].  However, like the defendant in <u>Dierschke</u>, the Defendant "chose to make a decision that he hadn't been served when, in fact, he had," and he decided to do nothing.  <u>See</u> <u>In re Dierschke</u>, 975 F.2d 181, 184 (5th Cir. 1992) (where the defendant explained his failure to answer by stating that he was involved in a second suit when served, so he didn't understand that he'd been served with a summons in the case in question, the Fifth Circuit affirmed the lower court's finding of willfulness and noted its determinations that the defendant simply "chose to play games with the court" and "chose to make a decision that he hadn't been served when, in fact, he had.").  The Defendant's inaction under these circumstances simply confirms that his failure to answer was intentional.

For these reasons, ABS-CBN respectfully submits that the Defendant's default was willful.  Again, the Defendant's willful failure to respond to ABS-CBN's Complaint,

like his failure to present a meritorious defense to ABS-CBN's claims, justifies the denial of his Motion to Vacate by itself.

**3.**  **Setting Aside the Default Judgment would Prejudice the Plaintiffs**

Almost fifteen months (449 days) passed from the date the Defendant was duly served with process on January 9, 2020, until he moved to vacate the Default Judgment on April 2, 2021.  This inexcusable delay would significantly and unfairly prejudice ABS-CBN if the Default Judgment is set aside.

To establish prejudice, "[a] plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud or collusion."  See Lacy v. Sital Corp., 227 F.3d 290, 293 (5th Cir. 2000).  Here, the Defendant was, among other things, illegally promoting and selling Pirate Boxes and Pirate Services, as well as communicating with his customers and prospective customers via his Facebook accounts under his aliases "Ann Ong" and "lifeforgreatness;" and illegally promoting and selling devices on his website, https//www.lifeforgreatness.com., on which an app could be installed to make pirated ABS-CBN streaming services available to his customers.  See, e.g., App. to MDJ, Ex. C – Reyes Decl. ¶¶ 4-5, 7, and 9 [Dkt. 20-3]; Complaint, Ex. 2 [Dkt. 1-2, p. 3]; App. to MDJ, Ex. B – Lawrence Decl., Ex. 2 [Dkt. 20-2, p.16].

The Defendant's "Ang Ong" and "lifeforgreatness" Facebook accounts have been deleted, and his https//www.lifeforgreatness.com. website, has been taken down.  See App. to this Response, Ex. A – Abbott Decl. ¶ 6 [Dkt. 35-1].  Consequently, the

Defendant's inexcusable delay has caused evidence to be lost, and made discovery significantly more difficult, if not impossible.  As such, ABS-CBN will undoubtedly be prejudiced if the Default Judgment is set aside.

**4.  Defendant Did Not Act Expeditiously to Correct the Default**

Again, the default was entered against the Defendant on February 25, 2020. See Clerk's Entry of Default [Dkt. 13].  Although the Defendant's Motion to Vacate fails to mention when the Defendant first learned of the default, he obviously *received* the Court's notice setting a hearing on ABS-CBN's motion for default judgment ("Notice") [Dkt. 24], since he called in and made his first appearance in this case during the hearing on January 6, 2021. As discussed in Section V(A) above, the Notice (together with copies of the motion [Dkt.19], appendix in support [Dkt. 20], and attachments thereto [Dkts. 20-1 through 20-4]), was mailed to the Defendant at the Wimberly Lane Location on December 5, 2020, and received and signed for at the Location on December 7, 2020. See Certificate of Service [Dkt.25]; App. to this Response, Ex. A – Abbott Decl. ¶ 4 [Dkt. 35-1]

This indicates that the Defendant was *aware* of the default taken against him by ***at least*** early December 2020.  Yet despite this fact, and despite the fact that Court advised him on January 6, 2021 that a default judgment would be entered against him, he still waited inexcusably until April 2, 2021 (***almost four (4) months***) to try to set the default aside.  For this reason, ABS-CBN respectfully submits that the Defendant did not act expeditiously to correct the default.

28

**5.  Conclusion**

In sum, all of the factors that should be considered in determining whether good cause exists to set aside a default judgment, favor ABS-CBN and preserving the Default Judgment entered in this case.  Whether based solely on the Defendant's lack of a meritorious defense or his willful default, or considering these factors alongside the prejudice that ABS-CBN will suffer if the Default Judgment is set aside and the Defendant's failure to act expeditiously to correct the default, the Defendant has failed to show that good cause exists to set aside the Default Judgment.  Accordingly, the Defendant's request that the Default Judgment be set aside pursuant to Rule 60(b)(1) should be denied.

**C.  Any Setting Aside of the Default Judgment Should be Conditioned upon Payment of ABS-CBN's Reasonable Attorney's Fees and Costs**

For the reasons discussed above, the Defendant has failed to show that good cause exists to set aside the Default Judgment.  However, if the Court is inclined to vacate his default and the Default Judgment, ABS-CBN respectfully requests that such action be conditioned upon the Defendant's payment of ABS-CBN's reasonable attorneys' fees and costs incurred in obtaining the default, moving for and obtaining the Default Judgment, and opposing the Defendant's Motion to Vacate.

In this regard, it is appropriate to condition setting aside a default or default judgment upon the payment of a sanction, such as paying the costs and attorney's fees

associated with the default.[6]  Here, it is reasonable for the Court to condition any vacating of the Defendant's default or the Default Judgment on the Defendant's payment of ABS-CBN's reasonable attorney's fees and costs incurred in obtaining the default, moving for and obtaining the Default Judgment, and opposing his Motion to Vacate.  ABS-CBN was forced to incur these fees and costs as a result of the Defendant's willful failure to respond to ABS-CBN's Complaint in this action, and his inexcusable delay in taking any action to set aside his default.  Therefore, if the Defendant is permitted to vacate his default and the Default Judgment against him, it is only just and equitable that he be required to pay ABS-CBN's attorneys' fees and costs incurred in performing these services.

## VI.  PRAYER FOR RELIEF

For these reasons, ABS-CBN respectfully requests that the Defendant's Motion to Vacate be denied in all respects.  Alternatively, if the Court is inclined to set aside the Defendant's default and the Default Judgment against him, ABS-CBN respectfully requests that such action be conditioned upon the Defendant's payment of the reasonable attorney's fees and costs that ABS-CBN incurred in obtaining the default, moving for and obtaining the Default Judgment, and opposing the Defendant's Motion to Vacate.

---

[6]    See, e.g., Joe Hand Promotions, Inc. v. Valdez, 2014 WL 30437, at *1 (N.D. Texas Jan. 3, 2014) (where defendants' conduct and delays necessarily caused plaintiff to incur attorney's fees in obtaining the default and opposing defendants' motion to set it aside, the court's order vacating default was conditioned upon payment of plaintiff's reasonable attorney's fees incurred in performing these tasks); St. Claire v. EnsureLink, No. CIV.A.3:01-CV-1548-G, 2001 WL 1568749, at *3 (N.D. Tex. Dec. 5, 2001) (ordering payment of reasonable and necessary attorneys' fees plaintiff incurred in seeking and taking default judgment).

Dated: April 23, 2021

                                  Respectfully submitted,

                                  BY:  s/Steven M. Abbott
                                        Steven M. Abbott
                                        State Bar No. 00797825
                                 Federal I.D. No. 9027
                                  Attorney-in-charge for Plaintiffs
                                  510 Bering Drive, Suite 300
                                  Houston, Texas 77057
                                  Telephone: (713) 467-1669
                                  Facsimile:  (713) 467-4936
                                  E-mail: abbottsteven@hotmail.com

## CERTIFICATE OF SERVICE

     I hereby certify that on this 23rd day of April, 2021, a true and correct copy of the above and foregoing document was duly served upon the Defendant through his counsel, Anissah Andang, a known user of the Court's ECF system, through the electronic filing of this document.

                                    s/Steven M. Abbott
                                    Steven M. Abbott